RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0023P (6th Cir.)
File Name: 02a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EDNA AYERS, Administratrix
of the Estate of Roy L.
Hardin, deceased,
            *Plaintiff-Appellant,*

            *v.*

UNITED STATES OF AMERICA,
            *Defendant-Appellee.*

No. 00-5993

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 00-00011—Joseph M. Hood, District Judge.

Argued: September 20, 2001

Decided and Filed: January 17, 2002

Before: NELSON and MOORE, Circuit Judges; KATZ,
District Judge.

———————————

* The Honorable David A. Katz, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**    Paul A. Casi, II, HOFFMAN & CASI, Louisville, Kentucky, for Appellant.   Debra J. Kossow, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Appellee.  **ON BRIEF:** Paul A. Casi, HOFFMAN & CASI, Louisville, Kentucky, for Appellant.      Debra  J.  Kossow,  UNITED  STATES DEPARTMENT   OF   JUSTICE,   CIVIL   DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

DAVID A. KATZ, District Judge. Plaintiff-Appellant Edna Ayers ("Ayers"), as administratrix of the estate of Roy L. Hardin ("Hardin"), filed suit under the Suits in Admiralty Act, 46 U.S.C.App. §§ 741-752 ("SAA") and the Federal Torts Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA") against Defendant-Appellee the United States. Ayers alleged that the negligent operation of Lock and Dam No. 2 ("Lock No. 2") on the Kentucky River by the U.S. Army Corps of Engineers ("Corps") led to the drowning death of decedent Hardin, Ayers' son. The United States filed a motion to dismiss. The district court held that the action came within its admiralty jurisdiction, was therefore barred by the statute of limitations, and granted the motion to dismiss. We affirm.

## I.  Background

Lock and Dam No. 2, located at mile 31 on the Kentucky River, is owned and operated by the United States through its agency, the Corps. Lock No. 2 consists of a lock, to allow vessel passage on the river, and a dam, to maintain a navigable water level. The area downstream of Lock No. 2, near Lockport, Kentucky, is a popular swimming area.

Appellant's claim that equitable tolling should be applied because she was misled by the United States' representations is without merit. It is well-established that the filing of an administrative claim under the FTCA will not toll the limitations period for an action under the SAA. *See McMahon*, 342, U.S. at 27; *see also Bovell v. United States Dep't of Defense*, 735 F.2d 755, 757 (3d Cir. 1984). Furthermore, there is no allegation that a representative of the United States ever misled Appellant as to her admiralty claim. In her brief to this Court, the Appellant states, "The first time admiralty jurisdiction was raised and the two-year statute of limitations was asserted as a defense was in response to the Appellant's Complaint." (Appellant's Brief at 28).

Appellant's contention that she should be excused from the consequences of her untimely filing because the existence of admiralty jurisdiction in this case was an unsettled issue is also not well-taken. Diligent research was likely to have revealed not only the existence of a possible claim under the SAA, but also that the limitations period for that action would most likely not be tolled by the filing of Appellant's administrative claim. Had Appellant any doubt as to whether her action was properly brought under the FTCA or the SAA, she was free to include in her initial complaint requests for relief under both statutes. FED. R. CIV. P. 8(a). Contrary to the suggestion of Appellant at oral argument, such alternative pleadings are not disfavored.

The district court's decision not to allow equitable tolling of the SAA's statute of limitations was correct and will be affirmed.

## IV. Conclusion

For the foregoing reasons, we hold that the Appellant's suit is barred due to her failure to file within two years of the alleged tortious activity as required by the Suits in Admiralty Act. The decision of the district court granting the motion to dismiss is AFFIRMED.

On August 3, 1997, Hardin was swimming approximately one hundred yards from the downstream discharge area of Lock No. 2, when the lock master began "locking through" two pleasure craft. "Locking through" the craft entailed opening the downstream discharge end of Lock No. 2, resulting in turbulence from the sudden and rapid release of water. Plaintiff alleges that this turbulence pulled Hardin under the water and caused him to drown. Plaintiff also alleges that the lock master negligently failed to warn others of his intent to operate Lock No. 2. Following Hardin's drowning, the two pleasure craft left Lock No. 2 and proceeded downstream on the Kentucky River without delay.

On June 28, 1999, Ayers filed an administrative claim for wrongful death with the Corps, pursuant to the FTCA. On July 19, 1999, an attorney for the Corps acknowledged receipt of the claim and stated that the matter would be investigated. On July 29, 1999, Ayers was informed by facsimile letter that the administrative claim had not been properly filed because it lacked necessary documents demonstrating authorization to file the claim. The facsimile also stated, "The claim has not been properly presented and the statute of limitations continues to run." In response to the Corps' facsimile, that same day Ayers sent a new administrative claim containing the proper authorization and recognizing that the six-month period for the United States' response to the claim would run from the date of the new claim.

There was no final disposition of Ayers' claim within the prescribed six-month period. On February 11, 2000, Ayers filed a Complaint in the United States District Court for the Eastern District of Kentucky. In her Complaint, Ayers alleged only that her action arose under the FTCA. On June 7, 2000, Ayers filed an Amended Complaint alleging that her action arose under the FTCA or, in the alternative, under the SAA.

The United States filed a motion to dismiss for lack of jurisdiction. The district court, applying *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995),

held that Ayers' action was before the court pursuant to its admiralty jurisdiction under the SAA and that the suit was untimely due to Ayers' failure to file her complaint within the two-year period allowed by 46 U.S.C.App. § 745. The district court also rejected Ayers' argument that the SAA's limitations period was subject to equitable tolling. The district court granted the motion to dismiss, and Ayers' appeal to this court followed. In her appeal, Ayers claims that her action was timely brought under the FTCA, or, in the alternative, that equitable tolling of the SAA's limitations period is appropriate based on her filing of an administrative complaint coupled with representations allegedly made by Corps attorneys concerning the tolling of the statute of limitations.

## II. Standard of Review

"A district court's dismissal of claims for lack of subject matter jurisdiction is reviewed de novo on appeal." *Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998) (citing *Kruse v. Village of Chagrin Falls, Ohio*, 74 F.3d 694, 697 (6th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996)).

## III. Discussion

### (A) Admiralty Jurisdiction

"Claims for which a remedy is available under [SAA] are not cognizable under FTCA." *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001) (quoting *Estate of Callas v. United States*, 682 F.2d 613, 619 n.7 (7th Cir. 1982)); 46 U.S.C.App. § 740. "The [SAA] permits suits in admiralty against the United States '[i]n cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained.'" *Pearce*, 261 F.3d at 647 (quoting *Faust v. South Carolina State Highway Dep't*, 721 F.2d 934, 938 n.2 (4th Cir. 1983)).

Prior to 1972, the existence of admiralty jurisdiction was determined by the locality test. Where "the wrong occurred on navigable waters, the action was within admiralty jurisdiction;

court was therefore correct in its determination that the exclusive remedy for Appellant's complaint is governed by the SAA.

### (D) Statute of Limitations

Actions under the SAA are subject to a two-year statute of limitations. 46 U.S.C.App. § 745. Failure to bring an action under the SAA within two years following the occurrence of an injury will deprive federal courts of jurisdiction to hear the action. *See McMahon v. United States*, 342 U.S. 25 (1951); *States Marine Corp. of Delaware v. United States*, 283 F.2d 776, 778 (2d Cir. 1960). Appellant's Complaint alleges that Hardin drowned on August 3, 1997. The Complaint was filed on February 11, 2000, and amended to include claims under the SAA on June 7, 2000. Appellant's claim falls outside the two-year limitations period and is therefore barred.

### (E) Equitable Tolling

Appellant argues that in the event admiralty jurisdiction exists, the United States should be barred from asserting a statute of limitations defense by operation of equitable tolling. She contends that tolling is appropriate both because the United States affirmatively represented that the administrative claim filed pursuant to her FTCA action tolled the statute of limitations and because her failure to timely file an admiralty action was not caused by "garden variety neglect," but instead resulted because her claim involved an issue of admiralty jurisdiction that was one of first impression in this circuit.

Equitable tolling allows an action to proceed despite its having been brought outside the statute of limitations when there exist exceptional circumstances that have prevented timely filing of the action through no fault of the Plaintiff. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). Although equitable tolling may be applied in suits against the government, courts will only do so "sparingly," and not when there has only been "a garden variety claim of excusable neglect." *Irwin v. Department of Veterans' Affairs*, 498 U.S. 89, 96 (1990).

The locality prong of the test for admiralty jurisdiction has been satisfied. Not only was Hardin drowned in navigable waters, but also the instrumentality that Appellant suggests caused the drowning (Lock No. 2) was located in navigable waters.

### (C)  The Connection Requirement

In its initial step, the "connection test" requires that we characterize the circumstances resulting in Hardin's death with some "intermediate level of generality." Here the incident may appropriately be characterized as a drowning which occurred a short distance downstream from a lock on navigable waters. So characterized, it is clear that there was some potential effect on maritime commerce. Barring immediate recovery of the deceased, a drowning requires vessels to engage in some rescue and recovery effort, and if such an effort were to occur immediately downstream from a lock, then some not-insignificant interruption of commercial activity might result. This potential interruption is sufficient to satisfy the first part of the "connection test."[2]

The second enquiry in the "connection test" requires examination of whether the tortfeasor's activity was substantially related to traditional maritime activity. *See Grubart*, 513 U.S. at 539. There can be no reasonable dispute that the operation of a lock is a traditional maritime activity. *See, e.g., Marine Transit Corp. v. Dreyfus*, 284 U.S. 263 (1932) (vessel sank while approaching a lock); *The Montello*, 87 U.S. 430 (1874) (recognizing that locks, dams, and canals allow navigation of otherwise unnavigable waters).

Both the location and connection requirements for admiralty jurisdiction are present in this case. The district

---

[2] In her brief, Appellant gives numerous reasons why the drowning did not result in any interruption of maritime commercial activity. The points raised by the Appellant are not relevant, however, because the test considers not what commercial disruption resulted, but what *potential* for disruption existed. *See Grubart*, 513 U.S. at 538.

if the wrong occurred on land, it [wa]s not." *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 253 (1972). In *Executive Jet,* the Court held that a determination of admiralty jurisdiction required inquiry into the "relationship of the wrong to traditional maritime activity." *Id*. at 261. Later in *Foremost Ins. Co. v. Richardson,* 457 U.S. 668 (1982), the Court stressed that admiralty jurisdiction existed only where the tort "had a significant connection with traditional maritime activity." *Id*. at 674. The *Foremost* Court found that the "significant connection" requirement was satisfied by "[t]he potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty holds for navigation," *id*. at 675, despite the fact that neither of the vessels involved in the *Foremost* collision was engaged in commercial activity. Thereafter, in *Sisson v. Ruby,* 497 U.S. 358 (1990), the Court held that maritime jurisdiction was appropriate when a potential hazard to maritime commerce arises out of an activity that bears a substantial relationship to traditional maritime activity. *See id*. at 363-367.

The Supreme Court most recently addressed admiralty jurisdiction in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). In *Grubart*, the Court held that admiralty jurisdiction existed over claims concerning flooding of buildings in downtown Chicago; the flooding had allegedly resulted after a crane situated on a barge on the Chicago River was used to drive piles into the riverbed above a tunnel. *See id*. at 529. The *Grubart* Court applied the *Sisson* test and stated that "[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Id*. at 534.

To determine if the location requirement has been satisfied, a court examining jurisdiction "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id*. Where there is some dispute as to the causation of an injury, a court

may look to general tort principles of "proximate cause." *Id.* at 536-37.

The "connection test" requires a two-part inquiry. First, the court is required to "'assess the general features of the type of incident involved' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 363, 364 n.2) (internal citations omitted). This assessment must be made by means of "a description of the incident at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538. Having characterized the incident, we are then required to ask "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 539.

To satisfy the second prong of the "connection test," the court "must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 365, 364 and n.2)). That is, the court "ask[s] whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart*, 513 U.S. at 539-40. We apply *Grubart* below.

### (B) The Location Requirement

The parties do not dispute that the portion of the Kentucky River in which Hardin was swimming when he drowned constitutes a navigable waterway, nor do they dispute that the lock master was "locking through" two pleasure craft just prior to Hardin's accident. Appellant argues, however, that these facts are insufficient to satisfy the location requirement for a number of reasons.

Appellant claims that the SAA requires that a vessel be involved in the commission of the tort. The SAA provides, in pertinent part, "In cases where if such vessel were privately

owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained. . . ." 46 U.S.C.App. § 742. The plain language of the statute states that only "private person or property" is necessary, so long as an action in admiralty might otherwise be maintained. Appellant's argument is therefore without merit.

Appellant also contends that because the lockmaster was on land when he activated the mechanism to release the water from the lock, this case should be characterized as a land-based tort that has caused injury on a navigable waterway. In effect, Appellant is asking this court to entertain an argument similar to that advanced in *Executive Jet*, in which the Supreme Court "refused to enter into a debate over whether the tort occurred where the plane had crashed and been destroyed (the navigable waters of Lake Erie) or where it had struck the sea gulls (over land)." *Sisson*, 497 U.S. at 361 (citing *Executive Jet*, 409 U.S. at 266-67). To engage in such a debate here would be to apply too mechanical an application of the locality test, something that the Supreme Court has recognized as neither "sensible" nor "consonant with the purposes of maritime law." *Grubart*, 513 U.S. at 533 (quoting *Executive Jet*, 409 U.S. at 261).

Finally, we note that Appellant's continued assertion that no vessel was involved in Hardin's drowning is disingenuous, at best. Although their connection with Hardin's drowning is clearly more tenuous than if he had been struck by or had fallen from one of the craft, Appellant does not dispute that the lockmaster activated Lock No. 2 to allow passage of two pleasure craft.[1] It would therefore be unreasonable for Appellant to assert that Hardin's drowning was entirely unrelated to watercraft.

---

[1] Appellant even states that such is the case in her Amended Complaint: "Such negligence included but was not necessarily limited to the sudden and rapid release of a large volume of water while transporting vessels through such Lock No. 2." (Apx. at 50).