

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-2005

# Hedges v. USA

Precedential or Non-Precedential: Precedential

Docket No. 03-4395

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Hedges v. USA" (2005). *2005 Decisions*. Paper 1275.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1275

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 03-4395
_____

DEAN HEDGES,
Appellant

v.

UNITED STATES OF AMERICA;
ENVIRONMENTAL MOORINGS INTERNATIONAL
_____

On Appeal from the District Court
for the Virgin Islands
(D.C. No. 00-cv-00003)
District Judge: Honorable Raymond L. Finch
_____

Argued December 13, 2004

Before: SLOVITER, FUENTES, and GREENBERG,
Circuit Judges.

(Filed: April 15, 2005)
_____

K. Glenda Cameron (Argued)
Law Office of Rohn & Cameron
Christiansted, St. Croix
U.S.V.I.  00820

    Attorney for Appellant

Michelle Delemarre (Argued)
United States Department of Justice
Washington, D.C.  20044

Attorney for Appellee

---

OPINION OF THE COURT

---

SLOVITER, <u>Circuit Judge</u>.

Appellant Dean Hedges, whose sailboat was destroyed by heavy seas after it was moored at the Virgin Islands National Park, appeals from the District Court's dismissal of his admiralty claim against the United States for lack of subject matter jurisdiction. We must decide whether equitable tolling is applicable to save Hedges' claim. The District Court for the Virgin Islands had jurisdiction under the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 741-752; this court has jurisdiction from the District Court's final order pursuant to 28 U.S.C. § 1291.

**I.**

On December 12, 1996, Hedges' boat broke free from its Virgin Islands National Park ("VINP") mooring and drifted onto nearby rocks, where it was destroyed. The painter line on the mooring, which was manufactured by Environmental Moorings International ("EMI"), appeared to have chaffed and come apart under harsh weather conditions. Hedge's boat was uninsured.

Shortly after the incident, Hedges sought advice from several Park Service employees regarding the proper avenue to pursue a claim against the United States. Hedges first contacted Mary Morris, the National Park Service ("NPS") Concessions Officer in St. Thomas, Virgin Islands, who had issued Hedges' permit to enter the VINP. He claims that Morris advised him to file a claim pursuant to the Federal Tort Claims Act ("FTCA"), and then mailed him a standard claim form ("SF-95"). Hedges then contacted Department of Interior ("DOI") Attorney Patricia Cortelyou-Hamilton, who responded by letter dated January 14, 1997:

> Enclosed per your request, please find a copy of Standard Form 95. The completed form along

2

with copies of all supporting documentation, should be sent to: Ms. Linda Giles [the Safety & Health Manager for the National Park Service] . . . Inquiries can be directed to the undersigned . . . .

App. at 108. Next, Hedges claims to have contacted Linda Giles who confirmed that a FTCA claim, filed on a SF-95 form, was the proper avenue for obtaining relief. Finally, Hedges contacted VINP Service Superintendent Francis Peliter who, on February 6, 1997, sent a letter to Hedges that read in its entirety: "I received your fax dated January 17, 1997 on February 3, 1997. I have asked Mrs. Mary Morris and Keith Watson of my staff to work with you on these issues." App. at 104.

On December 11, 1998, Hedges, proceeding pro se,[1] filed an administrative claim under the FTCA claiming property damage of $77,445.83. His claim also alleged personal injury damages of $15,000 due to a period of depression, allegedly brought on by the loss of his boat. On October 7, 1999 the DOI denied his claim. The Field Solicitor first reasoned that Hedges had alleged a maritime tort, a cause of action cognizable under the SAA, not the FTCA, and that under the comparative negligence regime for claims sounding in admiralty, Hedges did not have a meritorious claim. He concluded that whereas the United States "excercised [sic] reasonable care to make the mooring and the painter line safe," Hedges acted negligently by leaving his boat unattended during harsh weather conditions. App. 41-47.

On November 6, 1999, Hedges wrote a letter to the DOI protesting the denial of his claim, arguing that he did have a colorable cause of action under the FTCA, and emphasizing that it was impractical for him to hire an attorney because attorney costs would likely be more than the value of his boat. On November 19, 1999, the DOI issued a second denial of Hedges'

---

[1] Hedges did testify however that he had an attorney, Nancy D'Anna, assisting him for the first nine to ten months after his boat was destroyed. Hedges is now represented by counsel on appeal.

claim. Hedges once again protested this denial by submitting several letters and making several phone calls to the DOI. On January 25, 2000, the DOI issued its final denial of Hedges' administrative claim, stating that "[w]e have carefully examined the facts of your case and must deny your claim under both the Federal Tort Claims Act and under the Suits in Admiralty Act." App. at 57.

On January 5, 2000, before he had received the final denial of his claim from the DOI, Hedges filed a complaint against the United States and EMI in the District Court of the United States Virgin Islands, St. Croix Division, alleging diversity jurisdiction under 28 U.S.C. § 1332. On January 19, 2000, Hedges amended his complaint to assert a claim under the FTCA.

On March 24, 2000, the United States filed a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction. The Government argued that the SAA provides the exclusive jurisdiction for maritime tort claims against the United States, see T.J. Falgout Boats, Inc. v. United States, 508 F.2d 855 (9th Cir. 1974), cert. denied, 421 U.S. 1000 (1975), and that the two-year statutory limitations period under the SAA had lapsed. In his Opposition to the Motion to Dismiss, Hedges both moved to amend his complaint to plead jurisdiction under the SAA and argued that the statute of limitations should be equitably tolled because he had been "induced" by National Park Service personnel to "abstain from filing in [District] Court until after pursuing [an] administrative claim with the Federal Tort Claims Act." App. at 37.

After successive motions, and an oral hearing at which Hedges testified, the District Court entered a memorandum opinion granting the United States' Motion to Dismiss. The Court held that the statute of limitations in the SAA was a jurisdictional prerequisite to suit, and that even if equitable tolling were applicable, it was unwarranted in the present case. Hedges and EMI then settled, and Hedges filed a timely notice of appeal from the District Court's June 30, 2003 order dismissing his action.

4

## II.

The applicable statute provides that suits in admiralty against the United States must be brought "within two years after the cause of action arises," 46 U.S.C. § 745. An action arises on the date of injury. McMahon v. United States, 342 U.S. 25, 27 (1951); Bovell v. United States Dep't of Defense, 735 F.2d 755, 756 (3d Cir. 1984). Hedges concedes that his complaint, submitted on January 5, 2000 and amended on May 25, 2000, was filed after the statutory period expired. He argues, however, that the time in which he erroneously pursued an administrative claim under the FTCA should be excluded under the doctrine of equitable tolling and that the District Court erred by failing to do so.

We must first consider whether the doctrine of equitable tolling is available to suits brought pursuant to the SAA. If the two-year limitations period in the SAA is a jurisdictional mandate, equitable tolling would not be available. See Miller v. New Jersey State Dep't. of Corrections, 145 F.3d 616, 617-18 (3d Cir. 1998) ("[W]hen a time limitation is considered jurisdictional, it cannot be modified and non-compliance is an absolute bar."); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994) ("Where the filing requirements are considered 'jurisdictional,' non-compliance bars an action regardless of the equities in a given case."); see also Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997) (stating that exhaustion requirement of Title VII not jurisdictional and therefore subject to equitable tolling).

In Bovell, we stated that "[t]he Supreme Court has construed the SAA statute of limitations, 46 U.S.C. § 745, as a jurisdictional prerequisite to the waiver of sovereign immunity contained in the SAA." 735 F.2d at 756 (citing McMahon v. United States, 342 U.S. 25, 27 (1951)). Accordingly, we held that the two-year limitations period of the SAA could not be tolled for the period of time that a plaintiff erroneously pursued administrative relief under the FTCA. We stated that even if equitable tolling may apply to § 745 in "appropriate circumstances . . . the latitude which has allowed tolling of statutes of limitations under certain other statutory schemes, . . .

5

is usually not applied to statutes waving sovereign immunity." Bovell, 735 F.2d at 757. We concluded that no tolling was warranted under the circumstances of that case.

Bovell, however, was decided before the Supreme Court's decision in Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990), which held that statutes of limitations governing actions against the United States are subject to "the same rebuttable presumption of equitable tolling applicable to suits against private defendants." Id. at 96; see also United States v. Beggerly, 524 U.S. 38 (1998); United States v. Brockamp, 519 U.S. 347 (1997).

In Irwin, the Supreme Court addressed the issue of whether equitable tolling applied to a Title VII claim filed after the thirty-day statutory limitations period. The Court stated that:

> Once Congress has made such a waiver [of sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. . . . We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

498 U.S. 89, 95-96. In articulating this "general rule to govern the applicability of equitable tolling in suits against the Government," the Court expressed its intent to break with the past practice of deciding "each case on an ad hoc basis." Id. at 95. The Court has subsequently described the proper inquiry as follows: "Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" Brockcamp, 519 U.S. at 350 (emphasis in original).

Consistent with the broad language in Irwin, the federal courts have held that equitable tolling is applicable to a wide

6

range of cases against the Government, in addition to those under Title VII.  See, e.g.,  Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001) (applying equitable tolling to Federal Tort Claims Act); Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994) (stating that  equitable tolling applies to Age Discrimination in Employment Act), cert. denied, 513 U.S. 1128 (1995); Nunnally v. MacCausland, 996 F.2d 1, 3-4 (1st Cir. 1993) (applying equitable tolling to the Civil Service Reform Act).

Several courts of appeals have reached the same legal issue before us and have held that the two-year limitations period in the SAA is not jurisdictional.  See, e.g., Wilson v. United States Gov't, 23 F.3d 559 (1st Cir. 1994) (stating that the doctrine of equitable tolling applies to § 745);  Raziano v. United States, 999 F.2d 1539, 1540-41 (11th Cir. 1993) (same); Favorite v. Marine Pers. & Provisioning, Inc., 955 F.2d 382, 389 (5th Cir. 1992) (same).  In a recent post-Irwin decision, a judge of the Eastern District of Pennsylvania stated that "under the broad language of Irwin, the two-year bar of the Suits in Admiralty Act can no longer be considered to be jurisdictional as it had previously been interpreted." Arthur v. United States, 299 F. Supp. 2d 431, 434 (E.D. Pa. 2003) (declining to follow Bovell precedent).  That decision was justified under the Supreme Court's holding in Irwin and we too hold that the limitations period in the SAA is not jurisdictional, and therefore subject to equitable tolling.

In Beggerly and Brockamp, the Supreme Court set forth several factors that courts should consider in determining whether to rebut the Irwin presumption.  They are: 1) whether equity is already incorporated into the statute; 2) the length of the limitations period; 3) the substantive area of law; 4) the statutory language of the limitations period; 5) the availability of other explicit exceptions; and 6) the potential administrative burden of equitable tolling.  See generally United States v. Beggerly, 524 U.S. 38 (1998); United States v. Brockamp, 519 U.S. 347 (1977).

In Beggerly, the Supreme Court held that equitable tolling is not available in a suit brought pursuant to the Quiet Title Act.

7

Beggerly, 524 U.S. at 48-49 (Stevens, J., concurring). The Quiet Title Act includes a twelve-year limitations period, which begins to run from the date the plaintiff or his or her predecessor in interest knew or should have known of the claim of the United States. 28 U.S.C. §2409a. The Court reasoned that by incorporating a "knew or should have known" standard into the limitations period, Congress "has already effectively allowed for equitable tolling," and therefore no further tolling is justified. Id. at 48. In contrast, the limitations period in the SAA does not incorporate equitable considerations. The Supreme Court held in McMahon that the statute of limitations in the SAA begins to run on the date of injury. 342 U.S. at 27. Therefore, there is no basis for inferring that Congress has pre-empted equitable tolling by incorporating equitable considerations into the SAA's statute of limitations.

The presumption favoring equitable tolling is stronger when the limitations period is short. In Beggerly, the Supreme Court stated that the twelve-year limitations period in the Quiet Title Act was "unusually generous." 524 U.S. at 48. By contrast, the limitations period in the SAA is two years. We have previously held that a limitations period of this length is not so "generous" as to preclude equitable extension. See Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001) (holding that the two-year limitations period in the FTCA is subject to equitable tolling).

The Supreme Court has also considered the nature of the substantive cause of action when determining whether to apply equitable principles to suits against the Government; indeed the basis of Irwin's "rebuttable presumption," was that the law should provide equal treatment to private and Government defendants. 498 U.S. at 95-96. In Brockamp, the Court held that the limitations period for filing tax refund claims could not be tolled because "[t]ax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities." See Brockamp, 519 U.S. at 352. Furthermore, a claim for a tax refund can only be brought against the Government, and not against a private party. See, e.g., Webb v. United States, 66 F.3d 691, 697 (4th Cir. 1995). Tort claims, by contrast, can be

8

brought against private parties; in addition an action in tort requires the court to examine individual equities and balancing of case-specific facts. See Page Keeton et al., Prosser & Keeton on the Law of Torts 19 (5th ed. 1984) ("Tort law is overwhelmingly common law, developed in case by case decision making by courts."). Because actions in admiralty are based in principles of tort, we see no reason why the limitations period in the SAA should not be subject to equitable tolling in an appropriate case.

We examine next the form of the statutory language used in setting forth the statute of limitations. The Irwin Court made clear that equitable tolling applied not only to the permissive language in Title VII, ("[w]ithin thirty days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission . . . an employee . . . may file a civil action . . .") see 42 U.S.C. § 2000e-16(c), but also to the mandatory language in 28 U.S.C. § 2501 ("every claim . . . shall be barred unless the petition . . . is filed . . . within six years. . . ."). Irwin, 498 U.S. at 94-95. Moreover, we recently decided in Hughes that the language of the FTCA that "a tort claim against the United States shall be forever barred unless it is presented . . . within two years after such claim accrues . . .," 28 U.S.C. § 2401, is not jurisdictional. 263 F.3d at 278. Similarly, there is nothing in the language of the SAA (stating that "[s]uits as herein authorized may be brought only within two years after the cause of action arises . . ." 46 U.S.C. § 745), that ties the limitations period to the court's subject matter jurisdiction.

Finally, we consider the administrative burden on the Government. In Brockcamp, the Court found that the administrative burden of allowing equitable tolling to tax refund claims could overburden the IRS due to the millions of claims filed each year. Brockcamp, 519 U.S. at 352-53. The Government does not suggest that the number of claims filed under the SAA is of the same order of magnitude.

After examining the factors considered in Beggerly and Brockcamp we conclude that the presumption that equitable tolling applies to § 745 of the SAA is not rebutted.

9

Accordingly, based on the Supreme Court's recent decisions in Irwin, Brockcamp, and Beggerly, we hold that our prior holding in Bovell is no longer good law.[2]

It follows from the above discussion that the District Court erred (albeit by following our prior, now outdated precedent of Bovell) by evaluating the Government's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, rather than under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. See Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (holding that Government's Motion to Dismiss for failure to file Title VII complaint within non-jurisdictional thirty day statutory period should be treated under Rule 12(b)(6)).

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). The defendant bears the burden of showing that no claim has been presented. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991).

In contrast, the standard to be applied to a Rule 12(b)(1) motion is much more demanding. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Kehr Packages, Inc., 926 F.2d at 1409. Furthermore, the district court may not presume the truthfulness of plaintiff's allegations, but rather must "evaluat[e] for itself the merits of [the] jurisdictional claims." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

_____

[2]We are aware of only one decision to the contrary. In a pre-Irwin Ninth Circuit decision, Smith v. United States, 873 F.2d 218, 221 (9th Cir. 1989), the court held that "a federal court cannot extend § 745 [of the SAA] for any reason." Smith is still good law in the Ninth Circuit, however we are unaware of any opportunity the Ninth Circuit has had to revisit the issue following Irwin.

10

Despite the District Court's erroneous application of the much more stringent Rule 12(b)(1) standard in this case, we need not reverse the District Court's dismissal if, "'apply[ing] the same test the district court should have utilized initially,' plaintiff is not entitled as a matter of law to equitable tolling." Robinson, 107 F.3d at 1022 (citing Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413 (3d Cir. 1991) cert. denied, 502 U.S. 941 (1991)).

### III.

As a preliminary matter, Hedges argues for the first time on appeal that the court should apply a discovery rule to § 745 of the SAA. In other words, he contends that the two-year limitations period of the SAA should not begin to run until September 10, 1997, the date on which he claims to have discovered that the Government's negligence---in the use and maintenance of the mooring line---was the proximate cause of his injury. Not only has this argument been waived, Gass v. Virgin Islands Telephone Corp., 311 F.3d 237, 246 (3d Cir. 2002), but it is without merit. The Supreme Court explicitly held that the limitations period under the SAA begins to run on the date of injury. McMahon v. United States, 342 U.S. 25, 27 (1951). Furthermore, even were we to apply a discovery rule, Hedges' complaint in the District Court was filed on January 5, 2000, more than two years after Hedges claims to have discovered the Government's negligence. Thus, we turn our attention to the sole remaining issue: whether Hedges is entitled to equitable tolling on the facts of this case.

Equitable tolling applies when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999). This occurs "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." See Robinson, 107 F.3d at 1022 (applying this test in a Title VII action against the

11

Government).[3]  The plaintiff, however must "exercise due diligence in preserving his claim." Irwin, 498 U.S. at 96. Equitable tolling is an extraordinary remedy which should be extended only sparingly.  Id.; see also Barren by Barren  v. United States, 839 F.2d 987, 992 (3d Cir. 1988) ("limitations periods must be strictly construed").

Hedges, a pro se litigant during the relevant limitations period, actively sought the advice of Government representatives regarding the proper legal avenues to pursue his claim.  Several officials in the DOI and NPS advised him to file an administrative claim under the FTCA, and provided him with SF-95 forms to pursue such an action.  Relying on these representations, including a correspondence with DOI attorney Patricia Cortelyou-Hamilton, Hedges timely initiated an administrative action within the two-year limitations period of the FTCA—albeit on the last day of the period.  By the time this claim was denied by the DOI, the two-year limitations period of the SAA, which governed his claim, had lapsed.  Hedges argues that his reliance on the Government's advice justifies equitable tolling in the present case.

In Bovell, we stated that "it has generally been agreed that the statute of limitations in maritime actions is not tolled pending resolution of administrative claims erroneously filed pursuant to the FTCA." Bovell, 735 F.2d at 757. Though Bovell was

---

[3] Irwin stated that "[b]ecause the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." 498 U.S. at 96. Thus, the Supreme Court left open the possibility that federal courts could apply a more rigid equitable tolling standard to suits against the Government, than to suits against private litigants.  This court has declined to do so, applying the same standard in both instances. Compare Robinson, 107 F.3d at 1022 (involving a Title VII action against the Navy) with Seitzinger, 165 F.3d at 240 (involving a Title VII action against a private employer).

12

decided prior to <u>Irwin</u>, several other circuits ruling after the <u>Irwin</u> decision have adopted an identical rule. See <u>Ayers v. United States</u>, 277 F.3d 821, 828 (6th Cir. 2002) ("It is well-established that the filing of an administrative claim under the FTCA will not toll the limitations period for an action under the SAA."); <u>Rashidi v. Am. President Lines</u>, 96 F.3d 124, 127 (5th Cir. 1996) (stating that "the mere filing of an administrative claim does not toll limitations" period under the SAA); <u>see also</u> <u>Raziano v. United States</u>, 999 F.2d 1539 (11th Cir. 1993) (holding that the two-year limitations period in the SAA is not tolled during negotiations with the Government). Balancing the equities in the present case, we are not persuaded to deviate from these precedents.

While the Government did inform Hedges that he should pursue an administrative claim under the FTCA, we do not find that this advice was "actively misleading." As reflected in the DOI's October 7, 1999 and January 25, 2000 letter response to Hedges' administrative complaint, the DOI evaluated Hedges' damages claim not only under the FTCA but also under the SAA. Furthermore, the stated reason for denial of relief was not a procedural bar, as Hedges implies, but rather a decision on the merits. The January 25, 2000 letter stated, "[w]e have carefully examined the facts of your case and must deny your claim under both the Federal Tort Claims Act and under the Suits in Admiralty Act." App. at 57. Thus, informing Hedges to pursue an administrative claim in the first instance was not erroneous nor futile advice. Indeed, the record reflects at least one instance where the NPS reimbursed an individual who filed an administrative tort claim against the Government, claiming that his sailing vessel was severely damaged as a result of a defective mooring within the Virgin Islands National Park.

Further, and more importantly, there is no record evidence, nor does Hedges contend, that Government officials advised Hedges that he did not have a judicial remedy, or should not pursue one in addition to his administrative claim. Hedges cites no cases for the proposition that the Government has an affirmative duty to inform litigants, including <u>pro</u> <u>se</u> litigants, that they have viable judicial, as well as administrative remedies.

13

Indeed, cases point in the opposite direction. See Ammer v. United States, 881 F. Supp. 1007 (D. Md. 1994) (holding that equitable tolling should not extend the two-year limitations period in the SAA despite plaintiff's claims that he was induced by the Government into allowing the limitations period to expire because the coast guard had provided him with SF-95 forms that mention the FTCA but not the SAA); Cf. Pliler v. Ford, 542 U.S. 225, 124 S. Ct. 2441, 2446 (2004) (holding that district courts are not required to give pro se habeas petitions advice regarding stay and abeyance procedures). We are unwilling to place such a responsibility on the Government which has inquiries from millions of individuals each year.

There is also no evidence that the Government attempted to prevent or discourage Hedges from obtaining legal counsel. Simply stated, the Government did not induce or trick Hedges into foregoing his judicial remedies by making any affirmative misrepresentations regarding the proper avenues to pursue his claim. See Ammer, 881 F. Supp. 1007; see also Robinson v. Dalton, 107 F.3d 1018 (3d Cir. 1997) (holding that thirty-day limitations period for filing Title VII administrative complaint should not be tolled because pro se plaintiff relied on erroneous advice of EEO counselor).

Nor do we believe that Hedges has in "some extraordinary way been . . . prevented from asserting his . . . rights." Id. at 1022. The only special circumstances identified by Hedges are his pro se status and his contention that he suffered from debilitating depression caused by the loss of his boat. In McNeil v. United States, 508 U.S. 106 (1993), the Supreme Court declined to provide equitable relief to a pro se inmate whose FTCA claim was dismissed for failure to exhaust his administrative remedies. The Court stated:

> Our rules of procedure are based on the assumption that litigation is normally conducted by lawyers. While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, and have held that some procedural rules must give way because of

14

the unique circumstance of incarceration, we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, "in the long run experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

Id. at 113 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)) (internal citations omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (stating that a pro se plaintiff's "misconception about the operation of the statue of limitations" was "neither extraordinary nor a circumstance external to his control" sufficient to warrant equitable tolling); but see Shaver v. Corry Hiebert Corp., 936 F. Supp. 313, 317 (W.D. Pa. 1996) (stating that when a defendant "misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified"). The same rationale counsels against tolling the limitations period in the instant case, where the statutory text of the SAA is clear and where Hedges had the opportunity to retain counsel but chose not to do so.

Hedges' allegation that he suffered from severe depression fares no better. We have held that mental incompetence, even rising to the level of insanity, does not toll a federal statute of limitations for claims against the Government. See, e.g., Barren by Barren v. United States, 839 F.2d 987 (3d Cir. 1988) (denying equitable tolling in a FTCA claim for mental incompetence caused by Government's negligence); Accardi v. United States, 435 F.2d 1239, 1241 n.2 (3d Cir. 1970). It follows that even taken in combination, Hedges' pro se status and depression do not justify equitable tolling.

Finally, Hedges argues that the United States would not be prejudiced by application of the equitable tolling doctrine because it had notice of Hedges' claim within the SAA's two-year limitations. We will accept Hedges' argument that the Government suffered no prejudice but lack of prejudice is not

15

itself sufficient to warrant equitable tolling:

> Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.
>
> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

Hedges' failure to file a judicial action within the two-year limitations period prescribed by the SAA is merely a "garden variety claim of excusable neglect" to which we cannot extend equitable relief. Irwin, 498 U.S. at 96. Diligent research would likely have revealed not only the existence of an SAA claim but also that the limitations period under the SAA would not be tolled during the period in which he pursued an administrative complaint. See Ayers, 227 F.3d at 829; Rashidi, 96 F.3d at 124.

## IV.

For the above reasons, we will affirm the judgment of the District Court.

16