

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2007

# Ordille v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5062

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ordille v. USA" (2007). 2007 Decisions. Paper 1749.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1749

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5062

———

MARY ORDILLE;
RICHARD ORDILLE,

Appellants

v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF AGRICULTURE

———

On Appeal from the United States District Court
for the District of New Jersey
(Case No. 01-cv-03503)
District Judge:  Honorable Jerome B. Simandle

_____

Argued December 12, 2006

Before: FUENTES and VAN ANTWERPEN[*], *Circuit Judges*, and PADOVA,[**]
*District Judge*.

(Filed: January 24, 2007)

_____

[*]Judge Van Antwerpen participated via audio conference.

[**] The Honorable John R. Padova, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

Gerald J. Williams (Argued)
Williams, Cuker, Berezofsky
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002-1163

     *Counsel for Appellants*

Christopher J. Christie
 United States Attorney
Louis J. Bizzarri (Argued)
 Assistant United States Attorney
Office of the United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101

     *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

PADOVA, *District Judge*

Mary and Richard Ordille appeal the order of the United States District Court for the

District of New Jersey granting summary judgment in favor of the Department of

Agriculture. At issue is whether the Ordilles' claims of discrimination in violation of the

Equal Credit Opportunity Act are barred by the Act's statute of limitations, as that statute was

modified by Public Law 105-277, Title VII § 741. We have jurisdiction pursuant to 28

U.S.C. § 1291. We affirm.

I.

Because we write solely for the parties, we set forth only those facts necessary to our

analysis.

Mary and Richard Ordille are married blueberry farmers with a long history of difficulties with the Farm Service Agency ("FSA"), a bureau of the United States Department of Agriculture (the "USDA"), and its predecessor, the Farm Home Administration. They claim that the FSA discriminated against them in connection with applications for and existing extensions of credit, on the basis of their national origin, marital status and gender, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* (the "ECOA").

The Ordilles sent a letter to Dan Glickman, Secretary of the Department of Agriculture, dated January 3, 1997, complaining about their treatment by the FSA and requesting an investigation. The Ordilles enclosed with their letter a lengthy affidavit dated January 6, 1997, recounting their mistreatment by various officials of the FSA between 1982 and October 1996 (the letter and affidavit are referred to collectively as the "January 1997 complaint"). The January 1997 complaint referred to unethical treatment of the Ordilles' original loan application; the failure of FSA officials to inform the Ordilles about grant and loan opportunities made available to other farmers; the failure of FSA officials to provide assistance when the Ordilles suffered weather related crop failures; the failure of the FSA to refinance the Ordilles' loan at an agreed upon interest rate; the failure of the FSA to assist the Ordilles in the sale or conveyance of the farm to another farmer; and the refusal of the FSA to accept a conveyance of the farm to the FSA in satisfaction of the Ordilles' debt. Importantly, the January 1997 complaint does not allege that the mistreatment of the Ordilles

3

was a result of unlawful discrimination.

On February 20, 1997, the USDA responded to the Ordilles' complaint, rejecting their claims of mistreatment. On October 1997, in response to a request for information about the Ordilles' complaint made by Mary Ordille, Dr. Jeremy S. Wu, Deputy Director of the USDA's Office of Civil Rights (the "OCR"), wrote to Mary Ordille stating that the Program Investigations Division, which processes discrimination complaints by participants in the USDA's financial assistance programs, did not have an active complaint from her and sent her a complaint form. On January 1, 1998, the Ordilles filed another complaint, this one directed to the OCR, complaining of discrimination based on their national origin, sex and marital status and attaching a letter, dated January 1, 1998, setting out their history of problems with the FSA. The letter substantially repeated the history of the Ordilles' FSA transactions contained in the January 1997 complaint, but added that Mary Ordille had been discriminated against based on her sex and national origin (Italian American) because she had not been allowed to apply for the original FSA loan without her husband. The January 1, 1998 letter also contains the following statement which alleges discrimination based on Mary Ordille's sex, national origin and marital status: "We should not have been discriminated [sic] because my husband had a job, because I was an Italian American female working a farm, married or denied our rights, while other farmers were given equal opportunities and protected." App. at A61.

On September 17, 1999, Rhonda Davis, Chief of the Statute of Limitation division at

4

the OCR, sent a form letter to the Ordilles which stated that the OCR had recently reviewed their discrimination complaint in accordance with Section 741 of Public Law 105-277[1] and determined that their pre-July 1, 1997 complaint met the requirements for a waiver of the statute of limitations. The letter also explained how the Ordilles could seek administrative review of their ECOA claim, referred to as the Section 741 process. On October 28, 1999, Rosalind Gray, Director, OCR, sent a letter to the Ordilles enclosing a final decision of the USDA determining that there had been no discrimination in their case. On December 6, 1999, the Ordilles received a second form letter from Rhonda Davis, nearly identical to the September 17, 1999 letter and with the same docket number. The December 6, 1999 letter again informed the Ordilles that their pre-July 1, 1997 complaint met the requirements for a Section 741 waiver of the statute of limitations.

Sometime in 2000, the Ordilles received an undated letter from Rhonda Davis informing them that they were not eligible for the Section 741 waiver:

> This is to advise you that you are not eligible to participate under the Section 741 process. Your case was determined ineligible for Section 741 processing because your complaint was not filed with USDA prior to July 1, 1997. Our records show that your complaint was filed on January 1, 1998. This eligibility review is a final determination denying your complaint as eligible to be processed under the provisions of Section 741.

---

[1]Public Law 105-277, Title VII § 741, waived the ECOA's statute of limitations for certain claims brought against the USDA which were filed administratively with the USDA prior to July 1, 1997 ("eligible claims"), and substituted a new statute of limitations for those claims. This extension is referred to as the "Section 741 waiver."

App. at A68.

On October 18, 2000, the Ordilles asked that this determination be reviewed by an Administrative Law Judge ("ALJ") under the Section 741 process. On December 8, 2000, the ALJ issued his Proposed Determination, denying the Ordilles' complaint as time-barred. The ALJ concluded that the Ordilles' complaint was untimely, and not eligible for a Section 741 waiver, despite the September 17 and December 6, 1999 letters which stated that the Ordilles' pre-July 1, 1997 complaint met the requirements for waiver of the statute of limitations. The ALJ stated that those letters' "erroneous reference to a 'pre-July 1, 1997, complaint' cannot transform the ineligible Complaint in this case, filed on January 1, 1998, into an eligible Complaint which must have been filed prior to July 1, 1997." App. at A339. The Ordilles appealed the ALJ's Proposed Determination, arguing that the ALJ erroneously considered January 1, 1998 the date of their complaint, ignoring their January 1997 complaint, and that their January 1, 1998 complaint related back to the timely filing of the January 1997 complaint.

On February 1, 2001, the USDA adopted the Proposed Determination as its Final Determination. The Final Determination found that the Ordilles' complaint was time-barred and rejected the Ordilles' argument regarding relation back of the January 1, 1998 complaint on the grounds that the January 1997 complaint did not specifically assert discrimination based on sex, marital status or national origin. The Ordilles appealed the Final Decision to the United States District Court for the District of New Jersey on July 26, 2001. On

6

September 26, 2005, in a thorough and well-reasoned opinion, the District Court granted summary judgment to USDA, finding that the Ordilles had not filed a complaint that met the eligibility requirements of Section 741 and rejected the Ordilles' appeal. App. at 44.

## II.

The Ordilles ask us to find that the District Court erred in determining that their ECOA claim was not eligible for a Section 741 waiver and was, therefore, time-barred. Our standard of review of a grant of summary judgment is plenary. See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003). In reviewing the decision of the District Court, we assess the record using the same summary judgment standard that guides the district courts. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that there are no disputed issues of material fact and that the issues before us are purely legal.

## III.

The Ordilles contend that the District Court erred in granting summary judgment to the USDA, arguing that the USDA waived the Section 741 requirement that an eligible claim be filed prior to July 1, 1997 through the letters Rhonda Davis sent to the Ordilles on September 17, 1999 and December 6, 1999, and by reaching a decision on the merits of the Ordilles' discrimination claims on October 28, 1999. In the event that we find that the

7

eligible complaint requirement was not waived, the Ordilles argue that their January 1997 complaint is an eligible complaint pursuant to Section 741. They also contend that the January 1, 1998 complaint amended or perfected the January 1997 complaint and, therefore, relates back to the filing of the January 1997 complaint, which was filed prior to the expiration of the time period for eligible claims.

A.      The Relevant Statutes

The ECOA "creates a private right of action against a creditor, including the United States, 15 U.S.C. § 1691e(a), who 'discriminates against any applicant, with respect to any aspect of a credit transaction' 'on the basis of race, color, religion, national origin, sex or marital status, or age' or 'because the applicant has in good faith exercised any right under this chapter.'" Garcia v. Johanns, 444 F.3d 625, 629 n.4 (D.C. Cir. 2006) (quoting 15 U.S.C. § 1691(a)). "Credit transactions" are defined by the regulations governing the ECOA to include "'every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures).'" Id. (quoting 12 C.F.R. § 202.2(m)). The ECOA thus waived the sovereign immunity of the United States, permitting suits against the Government for discrimination in the provision of credit. The ECOA provides a two-year statute of limitations for claims made pursuant to that statute. 15 U.S.C. § 1691e(f) ("[N]o such action

8

shall be brought later than two years from the date of the occurrence of the violation . . . .").

However, in 1998, Congress passed, and the President signed, an extension to the statute of limitations for certain eligible claims, thereby further expanding the ECOA's waiver of sovereign immunity by allowing certain suits to be brought against the Government beyond the two-year statute of limitations.

The extension, Section 741, Pub. L.105-277, Title VII § 741; 112 Stat. 2681-30 (1998) (reprinted in 7 U.S.C. § 2279 notes), was enacted in response to the pleas of African-American farmers who had suffered years of racial discrimination in USDA programs, but, because of a history of inefficiency in the handling of discrimination complaints by the USDA, were unable to assert their discrimination claims in court pursuant to the ECOA. See Pigford v. Glickman, 206 F.3d 1212, 1215 (D.C. Cir. 2000). The USDA has explained that, during the 1980s and 1990s, inefficiencies in its review of civil rights complaints led to the expiration of the statute of limitations on claims which had been brought administratively within the USDA before the USDA made a determination of those claims. See 63 F.R. 67392 (codified at 7 C.F.R. Part 15f). The Secretary of the USDA, therefore, "sought the enactment of legislation to waive the applicable statutes of limitations for those individuals who had filed nonemployment related discrimination complaints with USDA alleging discrimination during that time period." Id. Section 741 retroactively extended "the limitations period for individuals who had filed administrative complaints with the USDA between January 1, 1981, and July 1, 1997 for alleged acts of discrimination occurring

9

between January 1, 1981 and December 31, 1996." Garcia, 444 F.3d at 629 n.4 (citing Pub.

L. No. 105-277, Title VII § 741, 112 Stat. 2681).

Section 741 states, in relevant part, that:

> (a) To the extent permitted by the Constitution, any civil action to obtain relief with respect to the discrimination alleged in an eligible complaint, if commenced not later than 2 years after the date of the enactment of this Act [Oct. 21, 1998], shall not be barred by the statute of limitations.
>
> (b) The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such complaint was filed not later than 2 years after the date of enactment of this Act [Oct. 21, 1998].

Pub. L. 105-277, Title VII § 741(a), 112 Stat. 2681-30 (reprinted in 7 U.S.C. § 2279 notes).

An eligible complaint is defined by Section 741 as:

> a nonemployment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996 –
>
> "(1) in violation of the Equal Credit Opportunity Act (15 U.S.C. 1961 et seq.) in administering –
>
> > (A) a farm ownership, farm operating or emergency loan funded from the Agricultural Credit Insurance Program Account; . . . .

Pub. L. 105-277, Title VII § 741(e), 112 Stat. 2681-31.

B.    Waiver of the Section 741 Limitations Period

The District Court rejected the Ordilles' argument that the USDA waived the eligible

10

complaint requirement of Section 741(e) because Section 741 is a waiver of sovereign immunity that must be strictly construed in favor of the Government and that cannot, therefore, be waived. See Ordille v. United States, Civ. A. No. 01-3503(JBS), 2005 WL 23772963, at *11-12 (D.N.J. Sept. 26, 2005). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992) (internal quotations omitted). Such waivers are strictly construed in favor of the sovereign. Id. at 34 (citation omitted).

The Ordilles contend that the District Court erred because Section 741 is not intended to be a distinct waiver of sovereign immunity, but merely an amendment to the two-year statute of limitations provided by the ECOA, which statute itself waived sovereign immunity for suits alleging discrimination in extensions of credit by the Government. The Ordilles argue that the eligibility requirements of Section 741 may thus be waived by the Government because, once the Government has waived its sovereign immunity, there is a rebuttable presumption that the limitations principles applicable in suits against private parties, such as waiver and equitable tolling, apply to suits against the Government. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990) (recognizing that once Congress has waived sovereign immunity, "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver" and holding that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits

11

against the United States"); see also Scarborough v. Principi, 541 U.S. 401, 421 (2004) (rejecting the Government's argument that the waiver of sovereign immunity from the payment of counsel fees to prevailing parties pursuant to 28 U.S.C. § 2412 must be strictly construed to prevent the relation back of an amendment to a fee petition because "'limitations principles should generally apply to the Government in the same way that they apply to private parties'" (quoting Franconia Assoc. v. United States, 536 U.S. 129, 145 (2002))).

Accordingly, the issue before us is whether the requirements of Section 741 are subject to the rebuttable presumption that the limitations principles applicable to suits against private parties should be applied to suits against the Government, or whether the eligibility requirements of Section 741 create a jurisdictional prerequisite to suit. See Hedges v. United States, 404 F.3d 744, 747 (3d Cir. 2005) (citing Miller v. New Jersey State Dep't. of Corrections, 145 F.3d 616, 617-18 (3d Cir. 1998); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) ; and Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)). This Court has previously explained that the following factors should be used in determining whether the Irwin presumption has been rebutted: "1) whether equity is already incorporated into the statute; 2) the length of the limitations period; 3) the substantive area of law; 4) the statutory language of the limitations period; 5) the availability of other explicit exceptions; and 6) the potential administrative burden of equitable tolling." Hedges, 404 F.3d at 748 (citing United States v. Beggerly, 524 U.S. 38, 48-49 (1998) and United

12

States v. Brockamp, 519 U.S. 347, 349-54 (1997)).

In considering the first factor, whether equity is already incorporated into the statute, the court looks at whether Congress "pre-empted equitable tolling by incorporating equitable considerations" into the limitations period. Hedges, 404 F.3d at 748-49 (citing Beggerly, 524 U.S. at 48-49); see also Beggerly, 524 U.S. at 48-49 (noting that the twelve-year statute of limitations provided by the Quiet Title Act, which began to run when the plaintiff knew or should have known of the claim of the United States, incorporated equitable considerations). The legislative history of Section 741 makes it clear that the statute incorporates equitable principles, as it is, in essence, an equitable tolling of the statute of limitations provided by the ECOA for certain eligible cases brought before the USDA in order to redress problems with the USDA's handling of these cases in the 1982 to 1996 time period. See Garcia, 444 F.3d at 629 n.4 (citing Pub. L. No. 105-277, Title VII § 741, 112 Stat. 2681); see also Pigford, 206 F.3d at 1215; and 63 F.R. 67392 (codified at 7 C.F.R. Part 15f).

The second factor clearly favors a finding that the eligibility requirements of Section 741 create a jurisdictional mandate, since Section 741 extends the limitations period for eligible complaints from two years to as many as nineteen years (for an eligible complaint filed by October 21, 2000 based upon discrimination occurring as early as January 1, 1981). See Pub. L. 105-277, Title VII § 741, 112 Stat. 2681-30; see also Beggerly, 524 U.S. at 48 (finding that extension of the statute of limitations by equitable tolling would be unwarranted where the statute incorporated equitable principles and had a twelve-year limitations period);

13

and <u>Hedges</u> 404 F.3d at 749 ("The presumption favoring equitable tolling is stronger when the limitations period is short." (citing <u>Beggerly</u>, 524 U.S. at 48 and <u>Hughes v. United States</u>, 263 F.3d 272, 278 (3d Cir. 2001)). In considering the third factor, the substantive area of law, we consider whether suits may be brought under the statute against private parties or only against the Government. <u>Hedges</u>, 404 F.3d at 749. This factor also favors a finding that the eligibility requirements of Section 741 may not be waived, since Section 741 is a unique statute, applying only to certain suits brought against the Government pursuant to the Equal Credit Opportunity Act. We also find that the remaining factors disfavor the application of the limitations principles available to private parties against the United States because Section 741 is a unique statute that only waives the statute of limitations for a limited class of complaints that were initially brought administratively against the USDA during a limited time period and that, because of administrative problems within the USDA during that time period, were otherwise lost because the statute of limitations expired on those claims before the USDA had made an administrative determination.

We find, therefore, that the <u>Irwin</u> presumption that the limitations principles applicable to private parties may be applied against the Government has been rebutted in this case, and that the eligibility requirements of Section 741 create a jurisdictional prerequisite to the waiver of sovereign immunity contained in the ECOA that must be strictly construed in favor of the Government. <u>See</u> <u>Nordic Village</u>, 503 U.S. at 33. The USDA could not, therefore, have waived the requirement of Section 741(e) that, to be eligible for a waiver of

14

the ECOA statute of limitations, the Ordilles' discrimination complaint must have been administratively filed with the USDA prior to July 1, 1997. The form letters sent by Rhonda Davis to the Ordilles on September 17 and December 6, 1999, and the October 28, 1999 decision of Rosalind Gray, although confounding to the Ordilles, could not waive the eligible complaint requirements of Section 741(e). Consequently, we find that the Ordilles' January 1, 1998 discrimination complaint was not an eligible complaint pursuant to Section 741(e) and that it was, accordingly, time-barred by the ECOA's two-year statute of limitations.

C.    The January 1997 Complaint

The Ordilles also contend, in the alternative, that their claim should not be time-barred because their January 1997 complaint was an eligible complaint pursuant to Section 741. The Ordilles' January 1997 complaint was filed within the allowable Section 741 time frame. It asserts that the FSA committed ethical lapses with respect to the Ordilles' loan, failed to communicate with them about loan programs, made mistakes with respect to the interest rate on the loan, and improperly refused to assist the Ordilles in conveying their farm to another farmer, or to accept conveyance of the farm to the FSA in satisfaction of the Ordilles' debt. The January 1997 complaint does not specifically assert, or even hint, that the FSA's actions were motivated by illegal discrimination. Pursuant to Section 741, an eligible complaint must allege discrimination during the period "beginning on January 1, 1981 and ending December 31, 1996 - (1) in violation of the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq.)." Pub. L. 105-277, Title VII § 741(e), 112 Stat. 2681-31. The January 1997

15

complaint does not allege discrimination in violation of the ECOA and, therefore, is not an eligible complaint.

D.    Relation Back

The Ordilles also ask the Court to view their January 1, 1998 discrimination complaint as perfecting, or amending, their January 1997 complaint. They assert that their January 1, 1998 complaint is an amendment of their January 1997 complaint and, thus, relates back to the filing of the January 1997 complaint and is, therefore, an eligible complaint pursuant to Section 741(e). The Ordilles have not, however, submitted any authority supporting their contention.

The Ordilles contend that Dr. Wu's October 1997 letter was an acknowledgment of their January 1997 complaint and a request that they supplement that complaint with additional allegations which set forth their specific claims of discrimination. The Ordilles' contention is not supported by the evidence of record. The Ordilles' January 1997 complaint was rejected by the USDA on February 20, 1997 and there is no evidence that the Ordilles sought any review of that decision. Dr. Wu's October 1997 letter does not ask the Ordilles to supplement their January 1997 complaint by specifically stating their claims of discrimination, but does state:

> The Program Investigation Division (PID) is responsible for processing discrimination complaints by participants for [sic] USDA's federal financially assisted or conducted programs. PID has searched their records and they do not show any active complaint from you.

16

> To register your complaint, please complete the enclosed form and return it to my office within 20 days of receipt of this letter in the enclosed envelope. Clearly indicate your legal representative, if you have one.
>
> If we do not hear from you within 20 days, we will assume that you do not wish to pursue a complaint and close our files on this matter.

App. at A55. The January 1, 1998 complaint, which was filed significantly more than twenty days later, does not purport to amend or add claims to the January 1997 complaint. Indeed, the January 1, 1998 complaint does not even mention the existence of an earlier complaint. Under these circumstances, we cannot view the January 1998 complaint as an amendment of the January 1997 complaint that was requested by the USDA.

Even if the January 1, 1998 complaint was intended by the Ordilles as an amendment, or perfection, of the January 1997 complaint, there is no authority which would support relation back of the latter complaint to the date of filing of the earlier complaint. The purpose of Section 741 is to revive certain pre-existing complaints which would otherwise be time-barred. The regulations which implement the adjudication process for discrimination complaints filed administratively within the USDA pursuant to Section 741 do not provide for the amendment or relation back of amendments to those complaints. See 7 C.F.R. Part 15f. To the contrary, the implementing regulations contemplate consideration only of the pre-existing complaint. See 63 F.R. 67393 (stating that "proceedings under these regulations will be at the request of, or with the consent of, the complainant to consider his or her pre-existing complaint under these procedures") (codified at 7 C.F.R. Part 15f). As there is no

17

statute or regulation that provides for the relation back of amendments to complaints made pursuant to Section 741, we look to the doctrine of relation back as it exists in the common law.[2] Under the common law, relation back of amendments is not permitted when the amendment alters the cause of action. See 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1471 (2d ed. 1990). Since the January 1997 complaint did not assert a claim for discrimination in violation of the ECOA, we conclude that the January 1998 complaint does not relate back to the filing of the January 1997 complaint and is, therefore, not an eligible complaint pursuant to Section 741(e).

## IV.

For the foregoing reasons, we will affirm the decision of the District Court in all respects.

---

[2]The Ordilles do not contend that Federal Rule of Civil Procedure 15(c) applies to administrative claims brought before the USDA pursuant to Section 741 and we have found no authority for such application.

18