

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2009

# Santos v. USA

Precedential or Non-Precedential: Precedential

Docket No. 07-4613

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Santos v. USA" (2009). *2009 Decisions.* Paper 1627.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1627

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4613

MERCY N. SANTOS,
a Minor by Jenny Beato,
her Parent and Natural Guardian,

Appellant

v.

UNITED STATES OF AMERICA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 06-01216)
Honorable Sylvia H. Rambo, District Judge

Argued December 2, 2008

BEFORE:  AMBRO and GREENBERG, <u>Circuit</u> <u>Judges</u>,
          and O'NEILL,* <u>District</u> <u>Judge</u>

                    Filed: March 11, 2009
                    ‾‾‾‾‾‾‾‾‾‾

David J. Foster (argued)
Costopoulos, Foster & Fields
831 Market Street
P.O. Box 222
Lemoyne, PA 17043-0000

   <u>Attorneys for Appellant</u>

Michael J. Butler
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108-0000

Gregory G. Katsas
Acting Assistant Attorney General
Civil Division
Phyllis J. Pyles
Director, Torts Branch
James G. Touhey, Jr.

*Honorable Thomas N. O'Neill, Jr., Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Assistant Director, Torts Branch
Conor Kells (argued)
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888, Ben Franklin Station
Washington, D.C. 20044

    Attorneys for Appellee

---

OPINION OF THE COURT

---

GREENBERG, <u>Circuit</u> <u>Judge</u>.


I. INTRODUCTION

This matter comes on before this Court on an appeal by plaintiff Mercy Nicole Santos by Jenny Beato, her Parent and Natural Guardian, from an order of the District Court entered on November 30, 2007, granting summary judgment to defendant United States of America in this medical malpractice case under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 <u>et</u> <u>seq.</u> ("FTCA"). The District Court concluded that the FTCA's two-year statute of limitations barred Santos's claim, rejecting her contention that the running of the limitations period should be equitably tolled so that her action would be timely. <u>Santos v. United States</u>, 523 F. Supp. 2d 435 (M.D. Pa. 2007). Because we conclude that the statute of limitations should be equitably

3

tolled, we will reverse the order of November 30, 2007, and will remand this matter to the District Court for further proceedings.

## II.  BACKGROUND

Mercy Nicole Santos was six years old when on November 20, 2002, her mother, Jenny Beato, took her to York Health Corporation's ("York Health")[1] pediatric clinic in York, Pennsylvania, because she had a swollen jaw and a fever.[2]  A clinic physician diagnosed Santos as having tooth decay, prescribed an antibiotic, and referred her to York Health's dental clinic.  Nevertheless, the swelling continued and her condition worsened.   Accordingly, Santos, on November 27, 2002, returned to the pediatric clinic, where the personnel again

---

[1] York Health later changed its name to Family First Health.

[2] It should be understood that we are stating the facts as they appeared on the Government's motion for summary judgment most favorably to Santos, and thus our recitation of the facts will not bind the parties in the further proceedings that will ensue on the remand we are directing.  Obviously, we are not making findings of fact with respect to the Government's possible liability for the alleged malpractice because on this appeal we are concerned only with the statute of limitations and tolling issues.  We do observe, however, as did the District Court, that the historical facts in this case essentially are not disputed.  See Santos, 523 F. Supp. 2d at 437.

referred her to the dental clinic and again prescribed an antibiotic. Santos then sought care at the York Health dental clinic, where a dentist extracted a decaying tooth in the belief that it created a small mass on Santos's lower jaw and was responsible for Santos's continuing fever. Yet when Santos returned to the dental clinic two days later for a follow-up appointment, the swelling and fever had not abated. A dentist examined her and told her to come back on December 2, 2002, which she did. Subsequently, on December 12 and December 18, 2002, she went to the pediatric clinic complaining of worsening neck pain and stiffness. The personnel there prescribed antibiotics and painkillers and again referred her to the dental clinic, where a dentist again observed her swelling and neck stiffness but made no further diagnosis.

On December 22, 2002, Santos's mother took her to the emergency room at York Hospital, a regional facility distinct from York Health, because her neck pain, swelling, and fever all had grown more severe. Personnel at the hospital performed a Computed Tomography scan, or CT scan, that revealed a deep neck-space infection extending from below Santos's jaw into her cervical spine. Santos had developed osteomyelitis, an infection of the bone and bone marrow, that had destroyed parts of her top two cervical vertebrae. After 19 days of surgery and other hospital treatments for the severe infection, and several months of wearing a cervical collar, Santos's top two vertebrae grew back fully fused together on the right side. This vertebrae fusion permanently impairs her movement, as she cannot turn her head to look over her shoulder, and the fusion likely will cause Santos to suffer from an accelerated degenerative disc disease in the vertebrae below the fused vertebrae.

Santos's mother retained counsel for her daughter, who investigated Santos's potential liability claim against York Health and its employees. Santos's counsel identified four persons he believed were the negligent healthcare workers who caused Santos's injury, a doctor, two dentists, and a physician assistant, and also identified their employer, York Health, an apparently private corporation. Thereafter, Santos's counsel performed a public records search on York Health, corresponded with York Health, obtained Santos's medical records, visited the clinic, and reviewed pertinent records onsite. To evaluate Santos's potential liability claim, her counsel retained a family practice expert, a dental expert, a professor of pediatric otolaryngology, and a board-certified spinal surgeon, all of whom prepared expert reports.

On May 25, 2005, about two years and five months after a physician at York Hospital diagnosed Santos with osteomyelitis, her counsel filed a malpractice action on her behalf in the Court of Common Pleas of York County, Pennsylvania, against the allegedly negligent parties, York Health and the four professional employees. Santos's counsel believed that notwithstanding Pennsylvania's two-year statute of limitations on malpractice actions set forth in 42 Pa. Cons. Stat. Ann. § 5524 (West 2004), her filing was timely because a Pennsylvania statute, 42 Pa. Cons. Stat. § 5533(b)(1)(i)-(ii) (West 2004), tolls the statute of limitations in a civil action brought on behalf of a minor until she reaches her majority at the age of 18 years. Undoubtedly, if the tolling statute had been applicable, his belief would have been correct.

Santos's investigations did not reveal, however, that for

6

treatment purposes under the FTCA the allegedly negligent healthcare workers and their employer, York Health, all had been deemed employees of the United States pursuant to the Public Health Service Act, 42 U.S.C. § 5201 et seq., as amended by the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (1992). See Public Health Service Act, 42 U.S.C. § 233(g)-(n).[3] This investigative failure was understandable as publicly available information did not reveal their federal status for malpractice purposes, though there was public information explaining that York Health received aid from, among numerous benefactors, the federal government, and the clinic did not appear to be a federal facility. The state-court defendants' federal status was critical because the FTCA's statute of limitations requires a malpractice claimant to bring an administrative claim with the applicable federal agency, here the Department of Health and Human Services, within two years after her cause of action accrues. Moreover, and as critical in this litigation, the FTCA does not include a tolling provision for minors comparable to that of Pennsylvania and many other states. 28 U.S.C. § 2401(b).

On September 2, 2005, as the FTCA provides, the Attorney General's designee certified that the state-court defendants were federal employees acting within the scope of their employment and removed the case to the District Court. 28

---

[3]42 U.S.C. § 233(g)(1) deems even a corporate entity entitled to the benefit of the tort protection of the Public Health Service Act and the FTCA to be an "employee of the Public Health Service."

U.S.C. § 2679(d)(2). The Government then substituted the United States as the sole party defendant. Id. Santos and the Government thereafter stipulated to a voluntary dismissal of the removed action without prejudice so that Santos could bring an administrative claim as the FTCA requires. 28 U.S.C. § 2675(a).[4]

Santos did not challenge the removal of her case to the District Court or the substitution of parties and, accordingly, she filed the contemplated administrative claim. The Department of Health and Human Services, however, failed to take action on her claim for six months, and its inaction was deemed a denial of her claim. She then filed this suit in the District Court. After answering the complaint, the Government moved for judgment on the pleadings, or, in the alternative, for summary judgment, on the ground that the FTCA's two-year statute of limitations barred Santos's claim. On the proceedings on the motion, Santos acknowledged that she filed her claim in the state court more than two years after its accrual, but argued that the FTCA's statute of limitations should be equitably tolled so that her claim would be timely because she did not know that the allegedly negligent healthcare providers had been deemed federal employees. The District Court rejected Santos's tolling argument and found that her claim was untimely because in its

---

[4] In this stipulation, the Government waived the right to file a motion to dismiss based on the FTCA's statute of limitations but reserved the right to plead as an affirmative defense "any statute of limitations issues" and the right to file a motion to dismiss on other grounds. App. at 102-03.

view she had not exercised due diligence in inquiring into the federal status of York Health and the individual providers. Thus, the Court granted summary judgment to the United States. Santos, 523 F. Supp. 2d 436-37. Santos then filed a timely appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject-matter jurisdiction under the FTCA, 28 U.S.C. § 1346(b), and we exercise jurisdiction under 28 U.S.C. § 1291. Our standard of review of the District Court's order granting summary judgment is plenary, see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007), as is our review of the District Court's finding that Santos failed to file her action within the period the statute of limitations allowed. See KingVision Pay-Per-View, Corp. v. 898 Belmont, Inc., 366 F.3d 217, 220 (3d Cir. 2004).

## IV. DISCUSSION

A. The Federal Tort Claims Act

As she recognizes, Santos must seek her recovery by proceeding under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., a limited waiver of the sovereign immunity of the United States providing that:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. To make a claim under the FTCA, a claimant first must file her claim with the administrative agency allegedly responsible for her injuries. 28 U.S.C. § 2675(a); see Reo v. United States Postal Serv., 98 F.3d 73, 75 (3d Cir. 1996) (discussing the FTCA). If the agency denies the claim or fails to resolve it within six months, as happened here, she then may file an action on her claim in a district court. 28 U.S.C. §§ 2675(a), 2672. District courts have exclusive jurisdiction over suits against the United States brought under the FTCA. 28 U.S.C. § 1346(b).

Even though substantively the FTCA follows state liability law, it includes a two-year limitations provision stating that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). Moreover, federal law, not state law, governs the determination of the often decisive question to answer for statute of limitations purposes of when a claim has accrued under the FTCA. Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 270 (3d Cir. 2006); Zeleznik v. United States, 770 F.2d 20, 22 (3d Cir. 1985). Similarly, state-law tolling statutes do not apply to the FTCA's limitations period, and thus the Pennsylvania tolling statute, the basis for Santos's timing in

10

bringing her state-court action, is inapplicable here.  Id. at 22; Sexton v. United States, 832 F.2d 629, 633 n.4 (D.C. Cir. 1987) (citing Zeleznik); see also Phillips v. United States, 260 F.3d 1316, 1318-20 (11th Cir. 2001).

Obviously, under the FTCA as originally enacted, if a claimant pursued her claim in the wrong forum she might find the claim barred.  Congress apparently regarded this result as harsh.  Consequently, in a 1988 amendment to the FTCA, the Westfall Act, 28 U.S.C. §§ 2671 et seq., Congress established a procedure for a claimant to follow if she initially files a FTCA claim in the wrong forum.  The FTCA now provides that tort claims filed in state court against federal employees acting within the scope of their employment "shall be removed . . . to the district court of the United States [where the claim is pending] . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2).  The amendment also includes a clause that saves from being barred by the statute of limitations certain timely claims filed in the wrong forum, such as in a state or a federal court rather than with the appropriate administrative agency.  Pursuant to this savings clause an errant plaintiff whose suit is removed to a district court, and then dismissed because she failed to bring the timely required administrative claim, will be credited with the date that she filed her claim in the wrong forum for purposes of the FTCA's statute of limitations.  Such claims will be deemed timely under section 2401(b) if

> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the

11

> appropriate Federal agency within 60 days after
> dismissal of the civil action.

28 U.S.C. § 2679(d)(5). Unfortunately for Santos, the absence of a tolling provision in section 2679(d)(5) meant that the claim she filed in the state court after the FTCA's two-year statute of limitations period had expired was not statutorily saved, and she does not contend otherwise.

It is undisputed that Santos's claim accrued on December 22, 2002, when she was six years old, when her mother took her to the York Hospital emergency room and the physicians there correctly identified her osteomyelitis by use of a CT scan. Accordingly, when Santos commenced her action against York Health and four of its employees in the Court of Common Pleas of York County, Pennsylvania, on May 22, 2005, more than two years had elapsed after her claim accrued. It therefore follows that in the absence of equitable tolling extending the time for her to file her claim, 28 U.S.C. § 2401(b) would bar her claim as untimely because even if Santos had filed her claim with the Department of Health and Human Services on May 22, 2005, it would have been untimely. Consequently, the FTCA's savings clause does not apply to her claim, a point not in dispute. Nevertheless, Santos argues that, in what she regards as the extraordinary circumstances of her case (i.e., her reasonable diligence through her counsel in pursuing her claim), the difficulty in determining that York Health and its employees had been deemed federal employees, and the approximately 11-year difference between the state-law and FTCA limitations periods, the FTCA's statute of limitations should be equitably tolled so that her claim is deemed to be timely.

12

B. The Equitable Tolling Doctrine Applies to the FTCA's Statute of Limitations.

The first disputed issue that we must address is whether in any circumstance there can be equitable tolling to relax the FTCA's limitations period. At one time we held that the FTCA's statute of limitations was jurisdictional. See, e.g., Bradley v. United States, 856 F.2d 575, 577-78 (3d Cir. 1988), vacated on other grounds, 490 U.S. 1002, 109 S.Ct. 1634 (1989). But the Supreme Court subsequently held that federal statutes of limitations are not jurisdictional and that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 93-96, 111 S.Ct. 453, 456-57 (1990). The Court reasoned that "[o]nce Congress has made such a waiver [of its sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." Id. at 95, 111 S.Ct. at 457. The Court observed that this general rule "is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." Id.

Applying Irwin, we have held that the FTCA's statute of limitations is not jurisdictional, and thus in appropriate circumstances the equitable tolling doctrine can apply in actions under it. Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001); see Hedges v. United States, 404 F.3d 744, 748 (3d Cir. 2005) (federal courts apply equitable tolling to wide range of cases against the Government, including FTCA claims). Other

13

courts of appeals also have applied equitable tolling in suits against the United States. Hedges, 404 F.3d at 748 (citing other courts of appeals); T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006) (citing courts of appeals holding that FTCA's limitations provision is jurisdictional but that equitable tolling nevertheless applies because Congress so intended). On the other hand, a court of appeals quite recently held that the FTCA's statute of limitation is jurisdictional and thus if a case is brought beyond the limitations period the court does "not have jurisdiction and, therefore, cannot apply the doctrines of equitable estoppel or equitable tolling that might otherwise allow [the] Plaintiff's case to proceed." Marley v. United States, 548 F.3d 1286, 1289 (9th Cir. 2008).

The Government contends, however, that we should not equitably toll the statute of limitations in this case notwithstanding Santos's asserted diligence in pursuing her action and in doing so attempting to identify the correct defendants. It predicates this argument on the FTCA's savings clause, which deems timely claims brought erroneously in state court, rather than before the appropriate federal agency, within two years after they accrue. 28 U.S.C. § 2697(d)(5). The Government contends that inasmuch as Congress explicitly provided a statutory exception to the FTCA's limitations period, we should not recognize additional nonstatutory equitable exceptions to the statutory limitations period. In support of its position, the Government cites TRW v. Andrews, 534 U.S. 19, 122 S.Ct. 441 (2001), a case under the Fair Credit Reporting Act ("FCRA"), which in certain circumstances confers a private right of action on consumers so that they may sue credit agencies. The FCRA, as in effect at the time of TRW, contained

14

a statute of limitations providing that actions to enforce liability under the FCRA must be brought "within two years from the date [liability accrues]" except in cases of willful misrepresentation by the defendant, in which case claims must be brought "within two years after [the plaintiff's] discovery . . . of the misrepresentation." TRW, 534 U.S. at 22, 122 S.Ct. at 444 (citing 15 U.S.C. § 1681p) (1994 ed.) (internal quotation marks omitted).

The issue presented in TRW was whether a general discovery rule, which delays the beginning of a limitations period until the plaintiff knew or should have known of her injury, applied in determining when a claim accrues under the FCRA. The Court held that a general discovery rule was not applicable in calculating the FCRA's limitations period because the statute's text and structure establishing the two-year limitation period and in the same sentence a specific and limited exception for cases of willful misrepresentation, evinced congressional intent to preclude judicial implication of a broader discovery rule. The Court reasoned that a judicially recognized general discovery rule under the FCRA would render the narrower statutory misrepresentation rule "insignificant, if not wholly superfluous." See id. at 31, 444 S.Ct. at 449. The Court explained that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." Id. at 28, 444 S.Ct. at 447 (internal citations and quotation marks omitted).

We believe that Congress, in adopting the statute of limitations in the FTCA, did not demonstrate that it intended to

15

preclude equitable tolling as it did in the FCRA. We reach this conclusion because Congress structured the two statutes differently. Thus, while Congress placed the FCRA's exception to the limitations provision within the same sentence as the general limitations provision connected by "except," 15 U.S.C. § 1681p (1994 ed.), in contrast it placed the FTCA's savings clause providing that certain claims filed within two years with the wrong agency are timely in a section distinct from the limitations provision. 28 U.S.C. §§ 2679(d)(5); 2401(b). The placement of the separate statutory savings provision does not suggest that Congress intended it to preclude equitable tolling, which the Supreme Court has presumed and held to apply in actions against the United States, Irwin, 498 U.S. at 95-96, 111 S.Ct. at 458; see also Hughes, 263 F.3d at 278; Hedges, 404 F.3d at 748; Ingram, 443 F.3d at 960-61, particularly in an area of law where equitable concerns may be greater. TRW, 534 U.S. at 27, 122 S.Ct. at 446-47 (distinguishing claim in that case, private action against a credit agency under FCRA, from medical malpractice claims).

The Government also argues that equitably tolling the statute of limitations would render the FTCA's savings clause "insignificant, if not wholly superfluous." See id. at 31, 122 S.Ct. at 449. But we reject this argument because the savings clause is applicable in cases in which equitable tolling would not be. For example, the FTCA's savings clause lacks any due diligence requirement and thus encompasses a "garden-variety claim of excusable neglect," a situation in which equitable tolling would not apply. See Irwin, 498 U.S. at 96, 111 S.Ct. at 458.

16

At bottom, the Government's argument seems to blur two issues: whether equitable tolling can apply to the FTCA's limitations period in any circumstance and whether it should apply in this case. We view the Government's arguments supporting the first contention as a subtle invitation to overrule Hughes, but we cannot take that step as that case is binding on us. Third Circuit IOP 9.1. Consequently, we will address the second issue and do so below.

In reaching our result that equitable tolling is possible under the FTCA, we recognize that the reasoning in certain recent Supreme Court decisions might call into question whether equitable tolling is available in FTCA claims and thus raise doubt as to the continuing viability of our holding in Hughes. See John R. Sand & Gravel Co. v. United States, 128 S.Ct. 750, 755-56 (2008) (distinguishing statutes of limitations protecting individual defendants, subject to waiver and equitable tolling, from those limiting the scope of governmental waiver of sovereign immunity, where equitable considerations are less likely to apply); United States v. Beggerly, 524 U.S. 38, 48-49, 118 S.Ct. 1862, 1868 (1998) (equitable tolling not available in Quiet Title Act claims against United States, where limitations period was 12 years and limitations period already effectively allowed for equitable tolling); United States v. Brockamp, 519 U.S. 347, 350-54, 117 S.Ct. 849, 850-53 (1997) (equitable tolling not available to tax refund claims, where limitation provision was detailed and technical, and where applying equitable tolling could create an immense administrative burden); United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 357 (1979) (cautioning courts neither to extend nor to narrow the FTCA's statute of limitations from what Congress

17

intended, because assertion of a claim within the limitations period is a condition of FTCA's waiver of sovereign immunity); see also Marley, 548 F.3d at 1289.

Notwithstanding the foregoing cases, Irwin remains good law, for the Court in John R. applied but did not overrule Irwin in holding that its presumption that equitable tolling applied had been rebutted. John R., 128 S.Ct. at 755-56. Consequently, these cases do not lead us to conclude that equitable tolling cannot apply under the FTCA.

The FTCA waives the sovereign immunity of the United States to the extent that it is liable on tort claims "in the same manner and to the same extent as a private individual under like circumstances," but includes a straightforward limitations provision separate from the waiver of immunity section. 28 U.S.C. §§ 2674, 2401(b). Considering that the FTCA creates tort liability "in the same manner" as liability is imposed on private individuals, the limitation provision is non-technical with a period of only two years, the circumstances surrounding tort and medical malpractice claims reasonably may justify applying equitable tolling to such claims, and neither the text nor structure of the freestanding statutory tolling provision suggests that Congress intended to preclude equitable tolling, we think that our holding in Hughes that there can be equitable tolling in suits under the FTCA remains good law which survives the later Supreme Court decisions to which we have referred. Hughes, 263 F.3d at 278; accord Ingram, 443 F.3d at 961-63 (equitable tolling applies even though limitation provision is jurisdictional); see Hedges, 404 F.3d at 748-51 (discussing factors to consider in determining whether Irwin

18

presumption is rebutted); but see Marley, 548 F.3d at 1290. Thus, though we agree with the Government that "the statute of limitations was not tolled due to [Santos's] status as a minor," appellee's br. at 16, we conclude that we cannot in all circumstances preclude equitable tolling of the statute of limitations in FTCA actions because if we did so we unjustifiably would take upon ourselves the authority to narrow the congressional waiver of the sovereign immunity of the United States. See Kubrick, 444 U.S. at 117-18, 100 S.Ct. at 357.

C.  Equitable Tolling Applies Here.

Inasmuch as equitable tolling can apply in cases under the FTCA, we turn to the question whether we should equitably toll the FTCA's statute of limitations in this case. Equitable tolling, if available, can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999). "This occurs (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Hedges, 404 F.3d at 751 (internal citations omitted); School Dist. v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981) (internal citations omitted).

19

But a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim. Irwin, 498 U.S. at 96, 111 S.Ct. at 457-58. The principles of equitable tolling thus do not extend to "garden-variety claims of excusable neglect." Id. at 96, 111 S.Ct. at 458. The remedy of equitable tolling is extraordinary, and we extend it "only sparingly." Id. at 96, 111 S.Ct. at 457; Hedges, 404 F.3d at 751. It is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States. The Supreme Court made that point clear when it indicated that inasmuch as the FTCA "waives the immunity of the United States, . . . in construing the [FTCA's] statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended," and the Court should not "assume the authority to narrow the waiver that Congress intended." Kubrick, 444 U.S. at 117-19, 100 S.Ct. at 357.

1. Santos Otherwise Diligently Pursued Her Claim.

It is clear that even though Santos did not determine before she brought her state court action that York Health and its employees had been deemed to be federal employees for FTCA purposes in malpractice actions, she diligently and vigorously pursued her claim. In this regard, after her claim accrued on December 22, 2002, she retained diligent counsel, who requested and reviewed her medical records, visited, corresponded with, and performed a public records search on York Health, and retained a family practice expert, a dental expert, a professor of pediatric otolaryngology, and a board-

20

certified spinal surgeon, all of whom prepared expert reports. We have brought considerable experience to the federal bench which we are confident allows us to identify a diligent counsel, and based on that experience and our examination of the record in this case we believe that no reasonable person can doubt that Santos's counsel was diligent. Yet we do not suggest that Santos's mere compliance with the statutorily tolled state statute of limitations and her counsel's thorough preparation of her case entitles her to equitable tolling under the FTCA. See Norman v. United States, 467 F.3d 773, 776 (D.C. Cir. 2006). On the other hand, Santos's compliance with state law and preparation of her case do evidence her general diligence and thus are significant, even though her diligence in itself could not overcome her failure to identify York Health and its personnel as federal employees.

2. Santos Diligently Inquired into the Employment Status of York Health and its Personnel.

The Government argues, however, that even if Santos generally was diligent, she did not exercise due diligence in inquiring into the employment status of York Health and its healthcare providers with respect to malpractice claims. Consequently, it contends that equitable tolling should not apply, even if Santos had been diligent with respect to the other aspects of her case. In support of its contention, the Government cites our decision in Zeleznik v. United States, 770

F.2d 20.[5] Zeleznik was an action against the Immigration and Naturalization Service ("INS") for the wrongful death of the plaintiffs' son. The plaintiffs sued the INS when they discovered, more than two years after their son's death, that the INS had released their son's killer just days before the murder even though the killer had confessed to the INS that he did not have an authorized status in the United States, was in fraudulent possession of a United States passport, and had been involved in illegal drug sales. Id. at 20-22.

We held in Zeleznik that the FTCA's two-year statute of limitations barred the plaintiffs' claim because it had accrued when they learned of their son's death and its immediate cause. Thus, they were put on notice of the need to investigate their claim even though at the time of his death they had not learned of the INS's involvement. We explained, following the Supreme Court's decision in Kubrick, that "the accrual date is not postponed until the injured party knows every fact necessary to bring his action." Id. at 23. Because the plaintiffs knew of their son's death and its immediate cause, even though they did not know of the INS's involvement, they possessed sufficient critical facts to investigate their claim, and inasmuch as the INS did not actively conceal its involvement in the case, the accrual of the claim was not postponed by reason of the plaintiffs' lack of actual notice of that involvement. Id. at 24.

But the issue here is not when Santos's claim accrued, as

_____

[5] At oral argument, the Government stated that Zeleznik is our most directly applicable precedent governing in this case.

that date is undisputed. It therefore follows that Zeleznik is not directly on point. In this regard, we emphasize that the discovery rule, which governs a claim's accrual date for statute of limitations purposes, is distinct from equitable tolling, which applies where circumstances unfairly prevent a plaintiff from asserting her claim. See Hedges, 404 F.3d at 750-51 (distinguishing between an equitable discovery rule governing when a claim accrues and equitable tolling); see also Valdez v. United States, 518 F.3d 173, 182 (2d Cir. 2008) ("Equitable tolling is frequently confused both with fraudulent concealment on the one hand and with the discovery rule–governing . . . accrual–on the other.") (internal citations and quotation marks omitted); Norman, 467 F.3d at 774-78 (addressing equitable estoppel issue where date that claim accrued was undisputed). The issue here is whether the limitations period should be tolled because the circumstances of this particular case unfairly precluded Santos from timely filing her claim.

The Government cites cases from other courts of appeals holding that equitable tolling did not apply in those cases to the FTCA's statute of limitations because the plaintiffs bringing state-law suits failed to perform reasonable investigations that would have demonstrated that the defendants had been deemed federal employees covered by the FTCA. Norman, 467 F.3d 777-78; Ingram, 443 F.3d at 964; Gonzalez v. United States, 284 F.3d 281, 291-92 (1st Cir. 2002). In Norman, the plaintiff who was struck by an automobile brought an untimely suit against the driver, a federal agency employee covered by the FTCA, without investigating either the driver or his employer. Norman, 467 F.3d at 774-76. The Court of Appeals for the District of Columbia Circuit concluded that equitable tolling did not apply

23

because "at no time during the FTCA's two-year statute of limitations did [the plaintiff] make any effort–diligent or otherwise–to identify [the defendant's] employer." Id. at 778. Norman is instructive because it contrasts with this case, in which Santos correctly identified the entity that was the employer of the four individual state-court defendants for all purposes other than under the FTCA.

In Gonzalez, a medical malpractice case, there was no evidence that the plaintiff made "any inquiry whatsoever" into the employment of the defendants, who were federal employees covered by the FTCA. Gonzalez, 284 F.3d at 291. The Court of Appeals for the First Circuit held that the FTCA's limitations period was not equitably tolled because "[a]lthough the plaintiff did not know the federal status of the defendants at the time of her treatment, she and her attorneys had two years to ascertain the legal status of the doctors and could easily have learned it." Id. at 291.

Similarly, the Court of Appeals for the Eighth Circuit in Ingram, also a medical malpractice case, declined to toll the FTCA's statute of limitations where the plaintiff was unaware of, but the Government did not hide, the fact that the allegedly negligent doctor was a federal employee subject to the FTCA. Ingram, 443 F.3d at 963-65 (citing Garza v. United States Bureau of Prisons, 284 F.3d 930, 935 (8th Cir. 2002)). In both Norman and Gonzalez, a simple investigation could have revealed the critical information, i.e., the federal or non-federal employment status of the defendants. Norman, 467 F.3d at 776-78; Gonzalez, 284 F.3d at 291. But see Ingram, 443 F.3d at 963-64; cf. Gould v. United States, 905 F.2d 738, 745 (4th Cir.

24

1990) (en banc) (where issue was accrual of claim under FTCA, plaintiff could have ascertained that defendant, a commissioned officer of United States Public Health Service, was a federal employee simply by contacting Department of Health and Human Services).[6]

In this case, the District Court noted that it was not clear whether Santos knew or should have known that York Health received federal funds, but nevertheless found that Santos "failed to exercise due diligence by attempting to ascertain the federal status of her health care providers." Santos, 523 F. Supp. 2d at 443. The District Court reached its conclusion because of Santos's admission that she did not confirm her belief based on correspondence with and inquiries into York Health and its employees that the allegedly negligent healthcare workers and their employer were subject to claims under Pennsylvania law.

Yet Santos's belief was far from a baseless assumption. See Gonzalez, 284 F.3d at 292 (plaintiff who "failed to make

---

[6]At oral argument before us the Government also discussed Whittlesey v. Cole, 142 F.3d 340, 343 (6th Cir. 1998). In that case, the Court of Appeals for the Sixth Circuit considered whether the equitable discovery rule (governing claim accrual) and a state-law statutory tolling provision applied to the Tennessee statute of limitations where the defendant was not a federal employee subject to the FTCA. Neither the discovery rule nor Tennessee law is at issue here, and thus Whittlesey is not helpful to us.

25

any inquiries whatsoever" into employment status of allegedly negligent healthcare providers not duly diligent). To start with, York Health apparently looked like a private clinic, and except for FTCA purposes the clinic and its employees were private actors, rather than federal employees. As the District Court explained, the "[h]ealth care workers at private clinics, even ones receiving some federal aid, are not federal employees in the usual sense. After all, they do not perform a traditional government function or work in a government building, and they are not on the federal payroll." Santos, 523 F. Supp. 2d at 442. Moreover, Santos based her implicit conclusion that York Health and its employees could be liable under state law on inquiries, reviews of records, and other contacts with York Health. Santos's counsel identified the individuals whose alleged negligence injured her, and further identified their employer, York Health, an apparently private corporation that he investigated by performing a public records search. Cf. Norman, 466 F.3d at 776 (plaintiff suing individual defendant without determining individual defendant's employer was not duly diligent).

In addition, we reiterate that Santos's counsel corresponded with York Health, obtained Santos's medical records, visited its facility, and retained several expert witnesses. None of these inquiries, records, visits, or correspondence gave him a clue that the healthcare providers or York Health had been deemed federal employees or that Santos should contact the Department of Health and Human Services for more information about them. Indeed, the District Court acknowledged that Santos's "assumption that her doctors were private actors subject to state law . . . was not at all unreasonable." 523 F.

26

Supp. 2d at 442.

The Government nonetheless claims that Santos could have ascertained that the FTCA protected York Health and its healthcare providers, and undoubtedly if she had been alerted to the need to explore their federal employment status then the Government's contention would be correct. Specifically, according to the Government, "[s]ources of information, including the very webpage cited in the affidavit of Plaintiff's counsel [as not revealing that York Health had been deemed a federal employee], were available, from which the status of York Health could be ascertained." Appellee's br. at 24. This website's main page stated that York Health receives funding from various federal, state, local, and charitable sources:

> The York Health Corporation receives grant support from the United States Department of Health and Human Services, the United Way of York County, the Family Health Council of Central Pennsylvania, the York County Community Development Department, the York City Bureau of Health, and the Pennsylvania Commission on Crime and Delinquency.

Id. at 10 (citing archived website).[7] In addition, the webpage

_____

[7]Our quotation is from the archived website. See http://web.archive.org/web/20040505050805/http://www.york

27

indicated that York Health was a "federally-qualified health center."[8]

The foregoing statements indicated that York Health received partial federal financial support from the Government. But they would not reveal to a reasonably diligent plaintiff that its doctors and clinics had been deemed federal employees under the Public Heath Service Act, 42 U.S.C. § 233(g)-(n), and thus were subject to the FTCA inasmuch as the Government gives financial aid to many entities, public and private, but their employees are not thereby federalized. In this regard, we point out York Health and its employees did not become employees of the other entities supporting them. With respect to the significance or not of federal aid, we cannot conceive that anyone would contend that on the basis of the common law application of the doctrine of respondeat superior the entities contributing to York Health's funding, including the United States itself, would be liable for York Health's employees' malpractice. After all, if making a contribution to an entity could have such a consequence, contributions to many charities, service and community organizations, foundations, and other nonprofit organizations would cease. Surely potential donors to such entities would not run the risk that by making their

---

healthcorp.com/index.html.

[8]This phrase at most indicates that federal law could be applicable to specific situations such as determining eligibility for a provider to participate in Medicare and reimbursement rates under that program.

contributions they would become liable for a future plaintiff's injuries attributable to such an entity's torts. Furthermore, if York Health was a federal employee it would not be expected that charitable organizations and state and local governmental agencies would be giving it aid.[9]

The Government asserts that in addition to the website, which did not indicate that York Health and its employees had been deemed federal employees, other "sources of information . . . were available" from which Santos could have learned this critical fact. Appellee's br at 24. At oral argument, when we asked what publicly available information would have alerted Santos that the allegedly negligent healthcare providers and York Health had been deemed federal employees, the Government stated that the Department of Health and Human Services maintains a database of clinics that receive funding and are deemed federal employees. Yet the Government did not indicate that the database was publicly available, or how it would be accessed, and the record does not specify where there is a public source setting forth the information. The absence of such a source is not surprising. As the District Court noted, the FTCA does not include a "requirement that deemed facilities

---

[9] Lest it be thought that the Government was compelled as a matter of law to treat Santos as it did, we point out that in the somewhat comparable litigation involving the timeliness of a claim under the FTCA in Bradley v. United States, 856 F.2d 575, vacated and remanded, 490 U.S. 1002, 109 S.Ct. 1634, on remand, 875 F.2d 65 (3d Cir. 1989) (per curiam), it took a very different approach than it does here.

publicize their status as federal entities, nor does [the Department of Health and Human Services] publish this information." Santos, 523 F. Supp. 2d at 447.

The Government also asserts that "[a] simple inquiry directed at the health center would have been sufficient in and of itself." Appellee's br. at 30. While the record does not indicate whether this assertion is true, clearly it presents an odd scenario in which Santos, a potential claimant, should have relied on her adversary to inform her of the applicability of the FTCA and its two-year statute of limitations. In any case, the Government does not contend that the healthcare providers or York Health would have been obligated legally to reveal their federal status. Moreover, while we do not doubt that the management of York Health understood its FTCA liability status, we are by no means certain that this knowledge extended to its employees, and the record is silent on this point. Overall, it seems to us, as far as we can see from the record, that Santos and her counsel had no reason to inquire as to the possible federal status of York Health and its employees.

3. Santos Was Precluded from Discovering That York Health and the Defendant Caregivers Were Federal Employees.

So where should Santos have looked to determine that the caregivers and York Health had been deemed federal employees, and what information could have alerted her of the need to do so? As a practical matter, York Health's federal status, if not covert, was at least oblique. Of course, Santos faces her statute of limitations barrier because of the Government's

30

failure to disclose that physicians . . . who provide services in private voluntary hospitals and in what appear to be private clinics, are de jure federal employees. Patients receiving such treatment are not aware, because they are never told or put on any notice, that the clinics they attend are government-funded or that doctors treating them are government employees. Such an omission does not rise to the level of fraud. Nevertheless, by not formulating a regulation that would require notice to a patient that the doctor rendering service to him is an employee of the United States, the Department of Health & Human Services has created a potential statute of limitations trap in states [that] may provide a longer period of time than the FTCA to file a complaint. The number of cases in which the United States has sought to take advantage of this trap suggests that it is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners. This conduct, if anything, is more problematic than the non-disclosure that justified invoking the doctrine of equitable tolling in [an earlier case].

Valdez, 518 F.3d at 183 (internal citations omitted); see Albright v. Keystone Rural Health Center, 320 F. Supp. 2d 286 (M.D. Pa. 2004) (equitably tolling FTCA's statute of limitations in medical

malpractice case where combination of Pennsylvania's minors' tolling statute and difficulty of ascertaining federal status of defendants resulted in extraordinary circumstances precluding plaintiff from timely filing her claim).[10]

Here, though York Health's website indicated that it received federal, state, local, and charitable funding, it did not provide notice to Santos that York Health and its employees were federal employees covered by the FTCA. And the Government has not identified, at least to us, any publicly available sources of information from which Santos could have learned this critical fact or, even if the information had been available, what circumstances should have led her to inquire into York Health's federal status for purposes of the FTCA. We reiterate that Santos correctly identified the allegedly negligent healthcare providers, determined that they were employees of York Health, and performed a public-records search on York Health. Santos's counsel also visited the clinic's facilities, corresponded with the clinic, and reviewed her medical records. But these inquiries did not reveal that the apparently private York Health and its employees had been deemed to be federal employees subject to the FTCA. And while Santos conceded that "the clinic did nothing to affirmatively mislead her as to its federal status," Santos, 523 F. Supp. 2d at 443, such affirmative misconduct is not required to find that she exercised due diligence sufficient for equitable tolling to apply. See, e.g.,

---

[10] While we reach the same result as the court in Albright, on which Santos heavily relies, we do so for somewhat different reasons as discussed here.

32

Valdez, 518 F.3d at 183. In considering all of the circumstances of this case, we have concluded that it satisfies the second of the three possible bases for concluding that there should be equitable tolling that we have set forth, for Santos "in some extraordinary way has been prevented from asserting . . . her rights." Hedges, 404 F.3d at 751.

We reach our conclusion applying equitable tolling with great caution, keeping in mind that we neither should expand nor contract the United States' waiver of its sovereign immunity, Kubrick, 444 U.S. at 117-18, 100 S.Ct. at 357, and that equitable tolling is an extraordinary remedy that we rarely apply. Hedges, 404 F.3d at 751. Here, however, inasmuch as the United States partially has waived its sovereign immunity under the FTCA, it would be inequitable to allow it to avoid potential liability by reason of a limitations provision whose applicability a reasonably diligent claimant did not discover.

## V. CONCLUSION

We make one final observation about the inequity of the Government's position that should be apparent to all. The only reason that Santos has been barred from bringing her action is that at the time of her injury she was a minor, so her counsel understandably believed that the Pennsylvania statutory tolling rule protecting minors applied in her case. Moreover, though there can be tolling under state law for reasons other than a plaintiff's minority, it is nevertheless likely that a plaintiff invoking such statutory tolling will be a minor relying on her

33

minority. Thus, the Government is contending for a result likely to prejudice the weakest and most vulnerable members of our society who surely are compelled to rely on others for the assertion of their rights, particularly when she is of tender years as was Santos when her cause of action accrued. There is no escape from the reality that the statute of limitations trap to which the court referred in Valdez is a perfect vehicle to ensnare children. In this regard we pose the following rhetorical question: can any rational person believe that Santos, who was six years old when her claim accrued at that time had any personal knowledge of malpractice actions and the FTCA?[11] Furthermore, we have no doubt at all that if Santos had been 18 years old on December 22, 2002, when her cause of action accrued she would have brought her claim in the state court within two years of that date so that the Westfall Act would have saved it. We believe that in reaching our conclusion we are acting consistently with congressional intent, as we do not think that Congress in the circumstances here would want to bar Santos from an opportunity to prove her claim.

Because of the extraordinary facts in this case centering on Santos's reasonable diligence and the federal involvement that was oblique at best, we conclude that the equitable tolling doctrine applies here to toll the FTCA's statute of limitations until Santos learned after filing her claim in state court that the state-court defendants had been deemed federal employees.

---

[11]In posing this question we are aware that we have indicated that "we impute to their parents or guardian the knowledge of their injury." Miller, 463 F.3d at 274.

Santos's claim is thus timely under 28 U.S.C. § 2401(b). We accordingly will reverse the order of the District Court entered November 30, 2007, granting summary judgment to the United States, and will remand the case to the District Court for further proceedings consistent with this opinion.

O'Neill, J., dissenting:

I respectfully dissent.

I agree with the majority's statement of the facts and characterization of the issues before us. The first disputed issue, whether in any circumstance there can be equitable tolling of the FTCA's limitations period, is complicated and has created a significant circuit split.

In Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), the Supreme Court held that non-jurisdictional statutes of limitations governing actions against the United States are subject to "the same rebuttable presumption of equitable tolling applicable to suits against private defendants." Id. at 96. The majority follows this Court's precedent in finding that the FTCA's statute of limitations is non-jurisdictional and that equitable tolling can apply. See Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001).

35

However, as the majority notes, a substantial circuit split exists on whether the FTCA is jurisdictional and whether equitable tolling applies.[12]  The Court of Appeals for the Ninth

[12]See e.g., Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), noting that it "has repeatedly held that compliance with this statutory requirement is a jurisdictional prerequisite to suit that cannot be waived" (citations omitted); but see de Casenave v. United States, 991 F.2d 11, 13 n.2 (1st Cir. 1993), holding that "[i]n light of the Supreme Court's holding in Irwin . . . the district court's refusal to entertain plaintiffs' tolling argument [with respect to Section 2401(b)] was erroneous"; Valdez ex rel. Donely v. United States, 518 F.3d 173, 185 (2d Cir. 2008), declining to determine whether to apply equitable tolling to the FTCA statute of limitations; Hughes, 263 F.3d at 278, holding that the FTCA's statute of limitations is non-jurisdictional and applying equitable tolling; Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 741 (4th Cir. 1990), finding that the FTCA statute of limitations is jurisdictional and unwaivable, so equitable tolling cannot be applied; Johnson v. United States, 460 F.3d 616, 619 (5th Cir. 2006), noting that it has not yet determined whether the FTCA is jurisdictional; but see Perez v. United States, 167 F.3d 913, 916-17 (5th Cir. 1999), holding that the FTCA statute of limitations may be subject to equitable tolling; Glarner v. U.S. Dept. of Veterans Admin., 30 F.3d 697, 701 (6th Cir. 1994), holding that the FTCA statute of limitations is not jurisdictional and can be equitably tolled; McCall ex rel. Estate of Bess v. United States, 310 F.3d 984, 987 (7th Cir. 2002), treating the statute of limitations as an affirmative defense and applying equitable tolling; T.L. ex rel.

Circuit's decision in <u>Marley v. United States</u>, 548 F.3d 1286 (9th Cir. 2008), notes that the issue is further complicated by the Supreme Court's recent decision in <u>John R. Sand & Gravel Co. v. United States</u>, 128 S. Ct. 750 (2008).[13]  A definitive Supreme

---

<u>Ingram v. United States</u>, 443 F.3d 956, 961 (8th Cir. 2006), holding that "there is no inconsistency between viewing compliance with the statute of limitations as a jurisdictional prerequisite and applying the rule of equitable tolling" (citations omitted); <u>Marley v. United States</u>, 548 F.3d 1286, 1290 (9th Cir. 2008), noting that it has long held that the FTCA's statute of limitations is jurisdictional and thus equitable tolling may not be applied; <u>Trobaugh v. United States</u>, 35 Fed. Appx. 812, 815 (10th Cir. 2002), applying equitable tolling to the FTCA's statute of limitations; <u>but see</u> <u>Farlaino v. United States</u>, 108 F.3d 1388, at *4 (10th Cir. 1997) (unpublished), noting that the FTCA limitations periods are jurisdictional and not subject to estoppel or waiver principles; <u>Torjagbo v. United States</u>, 285 Fed. Appx. 615, 618 (11th Cir. 2008), finding that the FTCA is jurisdictional but declining to determine whether equitable tolling applies; <u>Norman v. United States</u>, 467 F.3d 773, 776 (D.C. Cir. 2006), noting that it had not yet determined whether the FTCA's statute of limitations is jurisdictional.

[13]  The <u>Marley</u> Court noted that the Supreme Court held in <u>John R. Sand & Gravel</u> that the rebuttable presumption of <u>Irwin</u> is not the correct rule when past precedents analyzing the specific statute at issue are available.  <u>Marley</u>, 548 F.3d at 1292-93, <u>citing</u> <u>John R. Sand & Gravel</u>, 128 S. Ct. at 755-56; <u>see also</u> <u>Belton v. United States</u>, 2008 WL 2273272, at *9 (E.D. Wis. June 2, 2008).

Court holding on this issue would eliminate the confusion and permit the law to be applied uniformly.

However, I find it unnecessary to address this issue because, regardless of whether the FTCA statute of limitations can be equitably tolled, Santos fails to show that equitable tolling is appropriate in this case. The majority would apply equitable tolling here because it believes that Santos and her attorney exercised due diligence and that she was precluded from discovering that her doctors and their employer were federal employees under the FTCA. It is on this ground that I dissent.

The Supreme Court permits

equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights . . . . But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

Irwin, 498 U.S. at 95-96 (footnotes omitted). Under Irwin, equitable tolling is available where a plaintiff has actively

pursued judicial remedies but filed a defective pleading if plaintiff has exercised due diligence.  Id.  However, equitable tolling is an extraordinary remedy which should be extended only sparingly.  Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005), citing Irwin, 498 U.S. at 96.  The burden is on the party claiming the benefit of the exception to the statute of limitations to show that he or she is entitled to it.  Irwin, 498 U.S. at 96.

As the majority noted, we have found that equitable tolling is available in three circumstances.  Sch. Dist. of Allentown v. Marshall, 657 F.2d 15, 19-20 (3d Cir. 1981). Santos does not allege that defendant actively misled her regarding the cause of action or that she raised the statutory claim in a timely fashion but in the wrong forum as she filed approximately five months after the FTCA statute of limitations had elapsed.  Instead, plaintiff alleges that she is entitled to equitable tolling because she was prevented "in some extraordinary way" from asserting her rights because nothing put her on notice that she should inquire into whether York Health and her doctors were covered by the FTCA and the FTCA statute of limitations is eleven years shorter than the state statute of limitations.  Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005).  The majority claims that, despite an otherwise diligent investigation including medical records requests, public records searches and conversations with York Health employees, nothing put Santos and her attorney on notice to inquire into whether York Health employees were deemed federal employees under the FTCA before filing her state law claim.

39

I disagree with the majority's holding that Santos exercised due diligence in ascertaining the federal status of her health care providers. She retained an attorney six months after her claim accrued and requested medical records immediately. While Santos and her attorney were clearly diligent in obtaining medical records and expert opinions, they did not exercise due diligence in inquiring into the effect of York Health's federal grants or federal qualifications. Santos and her attorney had two years to ask whether the hospital was private or federal while her attorney prepared her case. As other courts have held, for Santos and her attorney merely to assume that York Health was a private entity without making any inquiries to confirm this assumption constitutes a lack of due diligence.[14] I agree with

---

[14] See e.g., Ingram, 443 F.3d at 964, holding that even if the plaintiff "had no reason to suspect" that the clinic was protected by the FTCA, "[t]he statute of limitations is not tolled, however, simply because a plaintiff is unaware that an alleged tortfeasor is a federal employee . . . . A plaintiff thus must inquire into the employment status of her doctor"; Norman, 467 F.3d at 775-76, declining to apply equitable remedies because defendants were not required to inform plaintiff of their federal status; Gonzalez, 284 F.3d at 291-92, holding that medical malpractice FTCA claim should not be equitably tolled despite the plaintiff's claim of "blameless ignorance" of federal status of her doctors; Gould, 905 F.2d at 745-46, holding that "blameless ignorance" is insufficient and that "[t]he burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable; Jones v. United States, 2007 WL 4557211, at *11-12 (M.D. Fla.

our sister courts and the district courts that have addressed this issue that Santos' failure to inquire into her doctors' federal status constitutes "a garden variety claim of excusable neglect." Irwin, 498 U.S. at 95-96.

Santos argues that she was never informed of York Health's FTCA coverage. However, employees protected by the FTCA have no duty to disclose their federal legal status. Gould,

Dec. 21, 2007), finding that the court could not apply equitable tolling to indigent single mother who failed to file her claim under the FTCA within the two year statute of limitations because she did not inquire as to the employment status of the doctors; Schappacher v. United States, 475 F. Supp.2d 749, 755-56 (S.D. Ohio 2007), holding that the statute of limitations should not be equitably tolled because of the plaintiffs' ignorance about doctor's federal status because they made no inquiry and there was no evidence that doctor affirmatively misled the plaintiff; but see Valdez, 518 F.3d at 183, noting in dicta that the government's decision not to require notice to patients of a doctor's federal status creates a potential statute of limitations trap in many states and that the government has taken advantage of this trap many times; Albright v. Keystone Rural Health Center, 320 F. Supp.2d 286 (M.D. Pa. 2004), finding that equitable tolling of the FTCA's statute of limitations was justified in a medical malpractice case where the combination of Pennsylvania Minor's Tolling statute and difficulty of ascertaining federal status of defendants resulted in extraordinary circumstances precluding plaintiff from timely filing her claim.

41

905 F.2d at 745. Santos concedes that she was not affirmatively misled by York Health or the government - Santos simply made no inquiry into York Health's status while receiving treatment nor during the two years that followed when an administrative FTCA claim could have been timely filed. Santos' attorney conceded that he did not confirm his assumption that York Health and its employees were private entities. To toll the FTCA statute of limitations because plaintiff is ignorant of defendant's federal status, plaintiff "must at the very least show that the information could not have been found by a timely diligent inquiry. . . ." Motley, 295 F.3d at 824, citing Gonzales, 284 F.3d at 291. Here, as in Motley, Santos had two years after discovering the alleged negligence to learn of the Public Health Service Act, 42 U.S.C. § 5201 et seq., (the Act) as amended by the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (1992), for which York Health had been deemed eligible since October 7, 1993, and to inquire into its possible application to her claim. The "failure to do so was a mistake of law that does not entitle [Santos] to equitable tolling." Id., citing Kubrick, 444 U.S. at 123-24. "[H]owever harsh it may seem, the law is clear that, absent active concealment, a plaintiff's ignorance of a person's status as a federal employee does not excuse plaintiff's failure to file a timely administrative claim." Kelly v. Total Health Care, Inc., 2000 WL 151280, at *1 (D. Md. Jan. 28, 2000), aff'd 3 Fed. Appx. 15 (4th Cir. 2000).

The majority attempts to distinguish factually-similar cases cited by the government that place the burden on plaintiffs to investigate defendants' legal status. The majority notes that Santos' attorney identified the doctors and their employer as

42

defendants but did not have cause to discover their status as federal employees while, in the other cases, the plaintiffs failed to inquire into the identity of the defendants' employer. The majority argues that these cases did not apply equitable tolling because the plaintiffs "failed to perform reasonable investigations that would have demonstrated that the defendants had been deemed federal employees covered by the FTCA." I do not agree that these cases are distinguishable on the basis that the plaintiffs failed to inquire about the doctors' employer.[15] Instead, these cases do not apply equitable tolling for the same reason it is not applicable here: the plaintiffs failed to inquire into the defendant's federal status regardless of whether they correctly identified the defendants' employer.

In Gonzalez, a child's mother consulted an attorney four months after the doctors' allegedly tortious conduct and filed a claim shortly after the FTCA's limitations period expired. Gonzalez, 284 F.3d at 285-86. The plaintiff claimed that she

---

[15] I note that Norman is distinguishable from this case because inquiry into the defendant's employer likely would have led to his federal status because the employer was the Environmental Protection Agency. However, though the majority relies on Norman as instructive, the Norman Court gives no indication that the plaintiff's identification of the defendant's employer would have been sufficient to justify equitable tolling. See Norman, 467 F.3d at 776, holding that "[a]t a minimum, due diligence requires efforts to learn the employment status of the defendant" and that the plaintiff had not met that minimum.

43

was "blamelessly ignorant" and could not discover the defendants' legal status. Id. at 291. The Court of Appeals for the First Circuit held that the plaintiff could not show due diligence justifying equitable tolling because she presented no evidence that she or her attorneys inquired as to defendants' federal status. Id. The Court found that the plaintiff had two years to ascertain the defendants' legal status and that to assume state jurisdiction without confirmation was a lack of due diligence. Id. at 291-92. Like Gonzalez, Santos and her attorney failed to inquire into defendants' legal status or confirm their assumption that state law applied. The majority cites the case as finding that "there was no evidence that the plaintiff made any inquiry whatsoever into the employment of the defendants." However, the Court found "no evidence ha[d] been presented that [plaintiff] or her attorneys made any inquiry whatsoever as to the status of the defendants as federal employees." The majority suggests that a "simple investigation" by Gonzales would have revealed the doctors' federal status but that it was impossible for Santos to discover that York Health was a federal employee. It is difficult to see how this could be. If Gonzales had discovered that her doctors worked for a different hospital, General Lawrence Family Health Center, then Gonzales would still have to learn the hospital's legal status - a step that the majority believes Santos was precluded from discovering although she knew her doctors' employer. Thus, like Gonzales, Santos and her attorney could easily have learned the legal status of her doctors.

In Ingram, a 15-year-old mother's attorney started investigating six days after the doctors' allegedly tortious conduct during her child's birth, requested medical records

44

within months and filed a claim within two and a half years. Ingram, 443 F.3d at 958. The plaintiff argued that she had no reason to suspect that her baby was delivered by a federal employee at the private hospital and that medical records made no such indication. Id. at 964. The Court of Appeals for the Eighth Circuit declined to apply equitable tolling because Ingram was unaware that her doctor was a federal employee when she knew her doctor's identity and there was no indication that the doctor or the United States attempted to conceal his federal employee status. Id. Santos and her attorney similarly received medical records that did not put her on notice of defendants' federal status though she knew the identity of her doctors and their employer. The Ingram Court relied not on Ingram's failure to inquire into her doctors' employer but on her failure to inquire into her doctor's legal status. That Santos identified her doctors' employer does not distinguish Ingram or Gonzalez and extinguish her obligation to inquire into her doctors' legal status.

Moreover, instead of following our sister courts in these factually-similar cases, the majority attempts to distinguish them and relies on the decision of the Court of Appeals for the Second Circuit in Valdez to support its proposition that Santos was precluded from discovering York Health's federal status. However, the discussion cited is dicta. The Valdez Court remanded the case on the issue of when the action accrued and the discussion cited by the majority began by noting that Valdez "involve[d] a special circumstance that may warrant equitable tolling" and concluded by stating that it was unnecessary to determine whether due diligence justified equitable tolling because it was remanding on the issue of accrual. See Valdez,

45

518 F.3d at 183, 185, emphasis added.

Under the majority's standard, for a plaintiff to identify her doctors and her doctors' employer but not to ask about their federal status because general diligence did not put her on notice to inquire is sufficient to justify equitable tolling. The majority believes that Santos' and her attorney's assumption was "far from [] baseless" when York Health looked like a private clinic, that its employees do not resemble traditional federal employees and that nothing revealed in general diligence "gave [Santos' attorney] a clue" that York Health and its employees were federal employees. However, plaintiffs have an affirmative duty to investigate defendant's legal status; defendants do not have a duty to disclose their identity as federally-protected employees. Gould, 905 F.2d at 745. The majority believes that Santos was precluded from discovering that York Health was a federal employee because neither York Health nor any "publically-available sources" provided notice of federal status and that even if the information were available no circumstances should have led her to inquire. The source that prompts the inquiry is not the facts; it is the law itself.[16]

---

[16] Additionally, the majority suggests that if federal grants to an otherwise private hospital impose liability on the federal government for its medical malpractice then, by that same logic, no one would donate to non-profits because of the risk of liability for the non-profits' malpractice and the federal government would be liable for all entities to which it provides support. This is logically flawed as the circumstance which creates liability for the federal government in this case is the

46

The information was not "undiscoverable" or even difficult to discover - the plaintiff need only know the law and ask. The only obstacle in learning of the defendant's federal status stemmed from ignorance of the applicable statutes, case law and literature in this area,[17] not from determining whether the Act applied. Santos has presented no evidence that an inquiry into her doctors' and York Health's legal status would

---

Public Health Service Act, not the financial support itself. For plaintiffs who know of the law, the existence of federal support is therefore sufficient notice that the Act could apply. In the present situation, it is not merely that York Health received federal support; it is that the United States waived its immunity and consented to be liable for the malpractice of those deemed federal employees under the Act if acting within the scope of their employment when a claim is timely filed.

[17] Case law in other courts and academic literature published before the FTCA statute of limitations tolled in this case should have operated to put Santos and her experienced medical malpractice attorney on notice of the requirement to inquire into her doctors' legal status. See e.g., Motley, 295 F.3d at 824; Gonzales, 284 F.3d at 291; Kelly, 2000 WL 151280, at *1; Joseph P. Griffith Jr., Medical Malpractice Litigation and Federally Funded Health Centers: A Primer on the Federally Supported Health Centers Assistance Act, 14-JAN S.C. Lawyer 32, 37 (2003); Richard W. Bourne, A Day Late, A Dollar Short: Opening a Governmental Snare Which Tricks Poor Victims Out of Medical Malpractice Claims, 62 U. Pitt. L. Rev. 87 (2000). If Santos' counsel had read any of the cases or articles cited, he would have been aware of this problem.

47

not have discovered it.

The majority suggests that this situation presents an "odd scenario" wherein a plaintiff must rely on her adversary to provide accurate information, that York Health is under no legal obligation to respond truthfully to Santos' inquiry into its legal status and that York Health employees may not be aware of their federal status. However, if Santos had exercised diligence by making the inquiry and York Health had misrepresented its legal status, equitable tolling likely would have been appropriate because Santos could claim that she was misled. Irwin, 498 U.S. at 95-96. Also, Santos need not have relied on York Health's statement of its legal status. If Santos or her attorney had been aware of the Public Health Service Act, they could have looked up the clinic on a Department of Health and Human Services website that lists clinics under the Act: http://www.bphc.hrsa.gov/. This website was available for this purpose no later than January 2003, almost two years before the FTCA statute of limitations ran in this case. See Griffith, Medical Malpractice Litigation, supra, at 37, describing procedures for determining whether a health center is covered by the Act and referencing the website. The majority excuses Santos and her attorney of the duty to inquire as to potential defendants' legal status if nothing puts them on notice to inquire while Congress has imposed no duty to disclose on federal employees covered by the FTCA. If plaintiffs need not ask and defendants need not tell, then the burden lies with neither party and equitable tolling is provided as a benefit to those who do not learn the law regardless of how much general diligence is done in the case.

48

Santos is in this situation because she and her attorney believed that she had additional time to file under the Pennsylvania Minor's Tolling Statute.[18] We agree with the majority that a plaintiff's minority status cannot toll the FTCA's statute of limitations because the knowledge of the injury and the correct party to sue is imputed to the parents.[19] Thus,

---

[18] The Pennsylvania Minors' Tolling Statute states:

> (i) If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.
> (ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa. C.S.A. § 5533(b)(1)(i-ii).

[19] See e.g., Ingram, 443 F.3d 956, holding that even the status of mother of injured infant as a minor when daughter was born did not toll the two-year statute of limitations under the FTCA; Wilson ex rel. Wilson v. Gunn, 403 F.3d 524 (8th Cir. 2005), cert. denied, 126 S. Ct. 367 (2005), holding that infancy does not ordinarily toll the FTCA statute of limitations because the parents or guardians of an infant plaintiff are under a duty to investigate an injury and its cause and to take legal action within the time prescribed; McCall, 310 F.3d 984, holding that neither

children in states with minority tolling statutes are in an identical position to adults in states with longer statutes of limitations for torts than that provided by the FTCA[20] and I have looked to those cases for guidance. Courts have not extended equitable tolling for adults in states that have longer statutes of limitations for tort claims than the FTCA's limitations period. See e.g., Gonzalez, 284 F.3d at 291-92, holding that plaintiff who incorrectly believed that the Massachusetts' three-year statute of limitations applied had not exercised due diligence where plaintiff failed to inquire into employment status of her doctor, who made no attempt to conceal his federal employee status; Kelly, 2000 WL 151280, *1 (D. Md. 2000), holding that plaintiff who filed within the Maryland statute of limitations had not exercised due diligence where defendant had not actively concealed federal status though it did not publicize that defendants were deemed to be federal employees.

---

minor's infancy nor mental incompetency, allegedly caused by United States, tolled FTCA administrative statute of limitations; MacMillan v. United States, 46 F.3d 377, 381 (5th Cir. 1995), holding that the limitations period is not tolled during minority of putative plaintiff because parent's knowledge of injuries is imputed to plaintiff; Robbins v. United States, 624 F.2d 971, 972 (10th Cir. 1980), same; Mann v. United States, 399 F.2d 672, 673 (9th Cir. 1968), holding that the time limitation is not tolled during a claimant's minority.

[20] As the District Court noted, "Fifteen states have statutes of limitations for medical malpractice claims that exceed the two year limit under the FTCA." Santos v. United States, 523 F. Supp.2d 435, 442 (M.D. Pa. 2007), collecting statutes.

50

As there is no case law in this Court involving a similarly-situated minor, I look to precedential law governing similarly-sympathetic plaintiffs. In McNeil v. U.S., 508 U.S. 106 (1993), the Supreme Court held that a pro se litigant's claim was properly dismissed because he failed to heed clear statutory text to wait until his administrative proceedings terminated before instituting an action in federal court under the FTCA. Id. at 113. The Court noted that it has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. Id. How can we allow an attorney's mistake of law to justify equitable tolling if precedent does not allow a pro se litigant's claim to proceed when it involves a mistake of law? Moreover, this Court has declined to extend equitable tolling to pro se litigants finding a lack of due diligence for failure to discover the proper causes of actions before the statute of limitations expired. See e.g., Hedges, 404 F.3d at 752-53, citing McNeil, 508 U.S. at 113; United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004), stating that a pro se plaintiff's "misconception about the operation of the statute of limitations" was "neither extraordinary nor a circumstance external to his control" sufficient to warrant equitable tolling; see also Huertas v. City of Philadelphia, 188 Fed. Appx. 136, 138 (3d Cir. 2006), holding that a plaintiff's "ignorance, inexperience and pro se status" do not equitably toll the statute of limitations in a personal injury case. The Hedges Court also held that the plaintiff's "mental incompetence, even rising to the level of insanity, did not toll a federal statute of limitations for claims against the Government" separately and in combination with the plaintiff's pro se status. Hedges, 404 F.3d at 753, citing Barren v. United States, 839 F.2d 987 (3d Cir. 1988), denying equitable

51

tolling for mental incompetence in a FTCA claim. It is inconsistent and, indeed, incomprehensible to extend equitable tolling to a child whose parent was aware of her injury and immediately employed an attorney experienced in medical malpractice when we do not extend it to mentally-incompetent and pro se litigants because of their mistakes of law.

As this Court has previously noted, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Hedges, 404 F.3d at 754. "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Id. at 753, citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984). While statutes of limitations can work a substantial hardship on plaintiffs and may harshly impact innocent parties by making it impossible to enforce otherwise valid claims, we must apply the law as written. "As the Supreme Court has instructed, it is clearly the prerogative of Congress, not the judiciary, to reform the terms and scope of waiver of sovereign immunity beyond that which Congress intended." Gould, 905 F.2d at 747, citing U. S. v. Kubrick, 444 U.S. 111, 117-19 (1979). In fact, Congress amended the FTCA in 1988 to provide statutory tolling of its statute of limitations for timely claims brought erroneously in state court rather than before the appropriate federal agency. 28 U.S.C. § 2697(d)(5). This provision protects the claims of plaintiffs unaware of defendants' federal status in states with statutes of limitations for tort claims of two years or less. Thus, any remaining "traps" within the FTCA's statute of limitations for minors in states

52

with minor's tolling statutes or adults in states with tort statutes of limitations longer than two years are for Congress, not this Court, to correct. <u>See</u> Bourne, <u>A Day Late</u>, discussing methods by which Congress could address this issue. To hold otherwise would effectively rewrite the two year statute of limitations of 2401(b) to allow the state statute of limitations or a state minor's tolling statute to apply whenever a plaintiff is unaware of a defendant's federal status.

In sum, if Santos and her attorney had considered the Public Health Service Act, the relevant case law and literature they would have known that York Health and Santos' doctors could be federal employees and that her cause of action could be governed by the FTCA. Their ignorance of the law and their failure to inquire into the possibility of its application are the only possible grounds for equitable tolling. As I previously noted, this is a "garden variety claim of excusable neglect"and not an example of due diligence that justifies equitable tolling. <u>Irwin,</u> 498 U.S. at 96. This is not one of the rare situations which justifies equitable tolling.

I would affirm the well-reasoned decision of the District Court.

53